193 P.3d 341

**STATE of Hawai'i, Respondent/Plaintiff–Appellant**

v.

**Gregory HEGGLAND, Petitioner/Defendant–Appellee.**

No. 27755.

Supreme Court of Hawai'i.

Aug. 8, 2008.

Reconsideration Denied Oct. 10, 2008.

Taryn R. Tomasa, Deputy Public Defender, for petitioner/defendant-appellee.

Anson K. Lee, (Dakota K. Frenz with him on the opening brief), Deputy Prosecuting Attorneys, County of Hawai'i, for respondent/plaintiff-appellant.

LEVINSON, NAKAYAMA, and DUFFY, JJ.; MOON, C.J., concurring in the result only; and ACOBA, J., concurring separately.

Opinion of the Court by DUFFY, J.

Petitioner/Defendant Gregory Heggland seeks review of the November 27, 2007 judgment of the Intermediate Court of Appeals (ICA), which vacated the sentence portion of the Circuit Court of the Third Circuit's January 17, 2006 judgment,[1] and remanded the case to the circuit court to resentence Heggland. We accepted Heggland's application for a writ of certiorari and now vacate the judgment of the ICA and remand the case to the circuit court for resentencing.

## I. BACKGROUND

### A. Factual and Procedural Overview

On May 13, 2004, Heggland was indicted for two counts of drug-related crimes allegedly committed on August 28, 2003: Promoting a Dangerous Drug in the Third Degree, in violation of HRS § 712–1243(1) (Supp. 2003) [hereinafter PDD] and Prohibited Acts Related to Drug Paraphrenalia, in violation of HRS § 329–43.5(a) (Supp.2003). Heggland pled guilty to both counts.

The prosecution moved to sentence Heggland to a mandatory minimum term of imprisonment of one year and eight months pursuant to HRS § 706–606.5,[2] on the ground that Heggland was a repeat offender based on a prior offense in Colorado. The circuit court denied the motion, concluding

that the prosecution had failed to adduce sufficient evidence of Heggland's Colorado conviction and of the fact that he was represented by counsel or waived his right to representation by counsel at the time of his prior conviction.

### B. Motion to Impose Mandatory Term of Imprisonment

#### 1. Arguments and Stipulations in the Sentencing Motion

On October 31, 2005, the state filed a "Motion to Impose Mandatory Term of Imprisonment, Pursuant to [HRS § 706–606.5], as Amended," requesting that Heggland be subject to a mandatory minimum term of imprisonment of one year and eight months, as required by HRS § 706–606.5(1)(a)(iv) for applicable PDD charges. The prosecution contended that the proviso in HRS § 706–606.5(2)(f), which only allows mandatory minimum sentencing for offenses committed "within the maximum term of imprisonment possible after a prior felony conviction of another jurisdiction," did not preclude imposition of a mandatory minimum sentence in this case, based on the following two grounds (nos. 3 and 4 of 7 asserted grounds):

3. At the time the Defendant committed the offenses in the instant case, he had prior felony conviction in Colorado (Department of Corrections No. 110596) for Conspiracy to Commit Aggravated Robbery;

4. The maximum term of imprisonment for this prior felony conviction in Colorado was November 21, 2004.

A sentencing hearing was held on November 2, 2005, but was continued until Decem-

---

1. The Honorable Glenn S. Hara presided over this matter.

2. HRS § 706–606.5 (1993 & Supp.2005) provides, in relevant part, that
 (1) ... any person convicted of ... any of the following class C felonies: ... section 712–1243 relating to promoting a dangerous drug in the third degree; ... shall be sentenced to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:
 (a) One prior felony conviction:
 ....

 (iv) Where the instant conviction is for a class C felony offense enumerated above-one year, eight months;
 ....
 (2) Except as in subsection (3), a person shall not be sentenced to a mandatory minimum period of imprisonment under this section unless the instant felony offense was committed during such period as follows:
 ....
 (f) Within the maximum term of imprisonment possible after a prior felony conviction of another jurisdiction.

ber 7, 2005 at the request of defense counsel.[3] On December 5, 2005, the prosecution filed a sentencing memorandum containing six stipulations made by Heggland in the November hearing. The following stipulations are relevant to this appeal:

> 3. At the time the Defendant committed the offenses in the instant case, he had prior [sic] felony conviction in Colorado (Department of Corrections No. 110596) for Conspiracy to Commit Aggravated Robbery;
>
> . . . .
>
> 5. At the time of the present offense he was on parole for a prior felony conviction in Colorado for Conspiracy to Commit Aggravated Robbery until November 21, 2004.
>
> 6. Up until November 21, 2004, his parole could have been revoked.

In addition to reducing these stipulations to writing, the prosecution: (1) asked the court to take judicial notice of (a) the date on which the PDD offense occurred (August 28, 2003), and (b) the fact that the Colorado offense for which Heggland had been convicted was a class 4 felony with a maximum sentence of six years with a mandatory minimum period of parole of three years, under Colorado Statute section 18–1.3–401(1)(a)(V); and (2) notified the court that it intended to call Heggland's parole officer Reggie Une to testify to (a) the date of conviction for Heggland's Colorado crime and (b) the fact that Heggland "could have been retaken and sent back to prison until November 21, 2004," which it called the " 'control and discharge' date" for the conviction.

The prosecution also argued that HRS § 706–606.5 applies to Heggland, because his prior conviction fell within the proviso of HRS § 706–606.5(2)(f). Specifically, the prosecution stated that

> The Defendant is subject to a mandatory minimum term of imprisonment of one year and eight months for [PPD] because under HRS Section 706–606.5(2)(f), it was committed on August 28, 2003, **"within**

the maximum term of imprisonment *possible"* after his prior felony conviction from Colorado (before November 21, 2004). Even if the Court, uses the maximum term of imprisonment (six years from Defendant's sentence on November 14, 1997 = November 13, 2003) and ignores the mandatory period of parole Defendant still committed the crimes in this case, Defendant committed this crime on August 28, 2003 (before November 13, 2003).

### 2. Evidence of Prior Conviction

In its per curiam opinion, ICA stated the following with respect to the evidence of Heggland's prior Colorado conviction:

> The State offered two exhibits into evidence. Exhibit 1, which was received into evidence without objection, appears to be a printout, downloaded from the Internet, of various Colorado laws related to sentencing in criminal cases. Exhibit 2 consists of two documents,[5] the first appearing to be a summary of information about a case against Heggland in Colorado and the second, a certified copy of an instrument entitled "Information" that was filed against Heggland in Colorado. Heggland's counsel and the circuit court had questions about Exhibit 2:
>
> > THE COURT:—this looks like a Colorado rap sheet.
> >
> > [DEFENSE COUNSEL]: It appears to be the minutes, uh, and I'm not sure that is considered a judgment.
> >
> > THE COURT: I don't know what it is. All I know the end certifies to be a true and correct copy by the clerk of the District Court or County Court.
> >
> > [DEPUTY PROSECUTOR]: Your Honor, if I may. My understanding of this is that this is a copy or a certified copy of, uh, for want of a better word, uh, the abstract showing the arrest and the conviction in Colorado.
> >
> > THE COURT: Okay, [Defense Counsel]?

---

**3.** An earlier sentencing hearing, held on September 29, 2005, had already been continued to

allow the parties to supplement the record.

[DEFENSE COUNSEL]: Your Honor, the—I think the case law says they have to show a valid prior conviction.

THE COURT: But isn't that what you stipulated to?

[DEFENSE COUNSEL]: That he was—uh, that he has a prior conviction for conspiracy to commit aggravated robbery, yes.

THE COURT: I don't see in the stipulation anywhere with respect to when he was convicted.

[DEPUTY PROSECUTOR]: Well, the document would bear that out, Judge.

THE COURT: Well, if I admit it.

[DEPUTY PROSECUTOR]: Yes. Your Honor, if necessary, I can put Mr. [Reginald] Une [ (Une or Mr. Une) ] on for proof of that fact.

THE COURT: What is he going to testify to?

[DEPUTY PROSECUTOR]: He would testify that based on his review of the case file that—

THE COURT:—I would expect that some kind of a certified court document from Colorado with respect to evidence of conviction if the dates are in question.

[DEPUTY PROSECUTOR]: Well, yes, Your Honor, that's what Exhibit Number 2 is, but I think the Court is saying what if I don't accept it.

THE COURT: I mean if these are minutes, I don't know if we can use minutes even in our court of our own convictions to prove convictions.

[DEPUTY PROSECUTOR]: I would submit, Your Honor, that this is an abstract that has been certified as being a correct copy of the original on file.

THE COURT: Abstract of court records?

[DEPUTY PROSECUTOR]: Yes. I will represent to the Court that we got this from the court in Colorado.

THE COURT: So you think if you had to prove a conviction in our courts for repeat offender purposes, you could use something like CJIS [ (Criminal Justice Information System) ] even if it were certified?

[DEPUTY PROSECUTOR]: Not so much CJIS, Your Honor, but as far as I understand, any kind of official court record kept in the ordinary course of business.

THE COURT: Why don't you call Mr. Une. Is he here?

Une, Heggland's former parole officer, then testified. He stated that he supervised Heggland's parole for the Colorado conviction through an interstate compact. He assumed case supervision over Heggland in November 2001 and was informed then that the maximum supervision term for Heggland's parole ended on November 21, 2004, which was Heggland's "controlling discharge date." Une testified that if Heggland's parole were revoked prior to the controlling discharge date, he "could have been sent back" to prison. Une said that, based on his review of the documentation in the interstate compact packet that the State of Colorado sent, Heggland was convicted on November 14, 1997. Une also stated that no copy or certified copy of the judgment in Heggland's Colorado case was included in the documentation sent by Colorado.

---

5 The heading at the top of the first page of the first document of Exhibit 2 reads, "Integrated Colorado Online Network (ICON)[,]" and the last page includes a certification by a deputy clerk of the District/County Court of El Paso County, Colorado that the document is a true and correct copy of the original in the custody of the clerk of the court. The first document appears to be a summary of information about a case captioned, "The People of Colorado vs EGGLAND [sic], GREGORY[,]" and includes many esoteric abbreviations. The document suggests, however, that Defendant–Appellee Gregory Heggland (Heggland) committed the offense of "Criminal Conspiracy" to commit "Aggravated Robbery" with the use of a deadly weapon on December 18, 1996 and was sentenced on November 14, 1997 to serve a

five-year term of imprisonment, with credit for time served of 323 days.

The second document of Exhibit 2 is a copy of an "Information" certified by a deputy clerk of the District/County Court of El Paso County, Colorado on December 14, 2004 to be a "true, and correct copy of the original in [the clerk's] custody." The Information charges Heggland, then a juvenile, with committing various offenses, including "Conspiracy to Commit Aggravated Robbery (F–4)." The copy of the certified Information does not include a file-marked stamp, but contains a notarized affidavit signed on January 24, 1997 by an investigating peace officer stating on personal knowledge that each offense set forth in the Information was committed as charged.

*State v. Heggland,* 116 Hawai'i 376, 378–79, 173 P.3d 523, 525–26 (App.2007).

### 3. Circuit Court Ruling

#### a. *oral rulings*

At the December 7, 2005 hearing, the circuit court made an oral ruling denying the prosecution's motion, stating:

> [T]he Court is going to deny the State's motion for repeat offender treatment in this case and mandatory minimum term on the following grounds.
>
> The State has failed to prove that the defendant was represented by counsel or that the defendant knowingly or intelligently waived representation at the time of prior conviction as required by *State v. Freitas* and *State v. Afong.* The *Afong* case is 61 Haw. 281[, 602 P.2d 927].

*Id.* at 380, 173 P.3d at 527. The deputy prosecutor then orally moved for reconsideration.

> [DEPUTY PROSECUTOR]: May I ask or at least make an oral motion for reconsideration at this time? The basis for that is this[: t]he Court had stated that the State has not proven that he was—defendant was represented by counsel. I would refer the Court to State's Exhibit Number 2, which has been stipulated into evidence. The second page thereof down—near the bottom, uh, it refers to the parties present,

November 14th, 1997 minute order. Judge Childress, DA Warkentin, DPWC PD Bonnet. I believe that stands for public defender, Judge, so.

> THE COURT: You can argue that but I don't know what it says. I'm looking at the document. There's nobody here to testify what it says.
>
> [DEPUTY PROSECUTOR]: Well, I ask the Court to take judicial notice of an adjudicated fact pursuant to Hawaii Rules of Evidence 201, ask the Court—or if the Court wishes, the State can check.
>
> THE COURT: You're asking me to speculate as to what those initials stand for.
>
> [DEPUTY PROSECUTOR]: Not speculate, Your Honor, but if the Court takes judicial notice if it's something easily ascertainable, then I ask the Court to do that.
>
> If the Court wishes the State to do that, the State will readily do so.
>
> THE COURT: Okay, I'm declining to do that as I indicated. I think it's your burden at the motion to prove these things, and, uh, I'm not convinced that the State has presented enough evidence to support its burden at this point on the representation issue.
>
> So if you want to go ahead and bring it up again on the hearing date, you may. But at this point, I'm not—I'm going to deny your oral request for reconsideration.
>
> . . . .
>
> . . . So—I'm sorry, I'm not making light of the State's burden. I think it's very difficult to prove prior convictions. Although it may sound simple, but it's not that easy.

*Id.* The circuit court then continued the matter to January 17, 2006. At the January 17, 2006 hearing, the circuit stated:

> [A]pparently the Court made an error the last time by stating that the State has a burden of proof of establishing the conviction and also the, uh, requirement that the convictions have been with counsel appointed in that case by evidence beyond a reasonable doubt.

In reviewing *State v. Freitas,* uh, it states that the facts of his prior conviction must be established by satisfactory evidence in an ordinary sentencing proceeding, okay.

In reassessing the evidence based on the procedures set forth in *State v. Freitas,* the Court is still not persuaded that the State has established the purported Colorado conviction by satisfactory evidence in this case.

The State's submitted Exhibit 2 at the December 7th, 2005 hearing on the motion for imposition of mandatory term of imprisonment. Exhibit 2 appears to be two separate documents. The first is a three-page certified copy of what it is—what is entitled, quote, Integrated Colorado Online Network Icon. The other document in Exhibit 2 appears to be a two-page information in, quote, 97CR329 close quote.

Uh, also having considered the, uh, testimony of parole officer Une, the Court is still of the mind and concludes that the fact of defendant's prior conviction, which is the basis for the State's 706–606 point 5 motion, has not been established by satisfactory evidence.

Court would note that in *Freitas,* among other things, there was a certified judgment of conviction. There's no certified judgment on conviction here.

The Integrated Colorado Online Network document submitted, while it suggests that Mr. Heggland was convicted of a class 4 felony, uh, again there is a lack of a what the Court would consider satisfactory evidence of his conviction. Furthermore, what was submitted does not indicate that he was, uh, represented by counsel, uh, in their proceedings that are indicated in the Integrated Colorado Online Network document.

The Hawaii case law is very specific that you do need to show that he was represented by counsel.

So, uh, the Court again based on its reconsideration of the matters based on its incorrectly stated burden of proof on the

State would find that, uh, defendant—I'm sorry, State's motion for sentencing under 706–606 point 5 is denied.

*Id.* at 380–81, 173 P.3d at 527–28. After additional colloquy, in which the prosecution again raised the issue of its burden of proof, the court reiterated its ruling. *Id.* at 381–82, 173 P.3d at 528–29.

b. *written order and judgment*

On February 2, 2006, the circuit court issued an order denying the state's motion to impose mandatory term of imprisonment. The order included two findings of fact:

1. There is insufficient evidence that Defendant was convicted of a class four felony in Colorado; and

2. There is insufficient evidence that Defendant was represented by counsel, or waived his right to counsel, at the time of the alleged Colorado conviction.

Accordingly, the court made a conclusion of law that the prosecution "has failed to prove that Defendant is subject to a mandatory minimum term of imprisonment under Section 706–606.5," and sentenced Heggland to five years of probation, including as a special condition service of a one year term of imprisonment with all but sixty days stayed. The prosecution filed a timely notice of appeal.

C. *ICA's Opinion*

In a per curiam opinion, the ICA vacated the sentence portion of the circuit court judgement and remanded for resentencing. *See Heggland,* 116 Hawai'i 376, 173 P.3d 523.

The ICA first addressed the prosecution's argument that the circuit court had mistakenly required it to prove both the validity of Heggland's prior conviction and that the conviction was counseled or that representation had been properly waived by Heggland. After reviewing the five-step procedure developed in *State v. Sinagoga,* 81 Hawai'i 421, 918 P.2d 228 (App.1996), for trial courts to follow to determine the applicability of mandatory minimum sentences,[4] the ICA con-

4. In *Sinagoga,* the ICA set forth a five-step procedure for trial courts to follow in cases "where ordinary sentencing procedures are applicable

and there is a possibility that the court may use the defendant's prior conviction(s) as a basis for

cluded that Heggland had failed to raise a "good faith challenge to the validity of his prior Colorado convictions required by step two of the sentencing procedure outlined in *Sinagoga*." 116 Hawai'i at 385, 173 P.3d at 532. Accordingly, the ICA held:

> The circuit court erred in denying the State's motion based on the State's alleged failure to prove that Heggland was represented by counsel at the time of his prior conviction or to prove the prior conviction by satisfactory evidence. Under *Afong* and *Sinagoga*, Heggland had conceded the validity of the prior Colorado conviction by failing to raise a good-faith challenge that it was uncounseled or did not pertain to him. He also affirmatively stipulated that he had a prior felony conviction in Colorado for Conspiracy to Commit Aggravated Robbery and was on parole for that offense when he committed the instant Hawai'i offenses. Thus, there was no need for the State to prove by evidence beyond Heggland's presentence report or stipulations that Heggland's prior conviction was valid.

*Id.* at 386, 173 P.3d at 533.

Second, the ICA turned to Heggland's opposition to the imposition of a mandatory minimum term of imprisonment based on his contention that the instant PDD offense "was not committed close enough in time to his Colorado conviction to fall within the time frame required by HRS § 706–606.5(2)(f)." *Id.* First, the ICA noted that the circuit court did not rule on this issue because it

found instead that the prior conviction had not been established. *Id.* The ICA went on to conclude that the instant PDD felony was committed "within the maximum term of imprisonment possible" after his Colorado conviction, *id.* at 388, 173 P.3d at 535, and that "the circuit court erred in failing to impose a mandatory minimum term pursuant to HRS § 706–606.5." *Id.* at 386, 173 P.3d at 533.

To reach this conclusion, the ICA first considered the evidence introduced by the prosecution:

> The State introduced in evidence a certified copy of the Information filed against Heggland in the District Court, El Paso County, Colorado. Count III of the Information charged that "on or about the 18th day of December, 1996," Heggland committed the offense of Conspiracy to Commit Aggravated Robbery, "[i]n violation of Colorado Revised Statutes [ (CRS) ] 18–2–201(1), as amended ..." The State also introduced into evidence a document that appears to be a certified abstract of Heggland's Colorado criminal record, which reflected Heggland's conviction for Conspiracy to Commit Aggravated Robbery, and a copy of the Colorado statute, CRS § 18–1.3–401, which sets forth Colorado's sentencing scheme for felony convictions. Heggland's parole officer in Hawai'i testified that the "controlling discharge date" for Heggland's parole for the Colorado conviction was November 21, 2004 and that until that date, Heggland could have been sent back to prison for violating his parole.

the imposition or enhancement of a prison sentence." *Id.* at 447, 918 P.2d at 254.

Step one, the court shall furnish to the defendant or defendant's counsel and to the prosecuting attorney a copy of the presentence report, HRS § 706–604, and any other report of defendant's prior criminal conviction(s). Step two, if the defendant contends that one or more of the reported prior criminal convictions was ... uncounseled ... and/or ... not against the defendant, the defendant shall, prior to the sentencing, respond with a good faith challenge on the record stating, as to each challenged conviction, the basis or bases for the challenge. Step three, prior to imposing the sentence, the court shall inform the defendant that (a) each reported criminal conviction that is not validly challenged by the defendant is defendant's prior, counseled, validly entered, criminal conviction, and (b) a challenge to any

reported prior criminal conviction not made by defendant before sentence is imposed may not thereafter, absent good cause, be raised to attack the court's sentence. Step four, with respect to each reported prior criminal conviction that the defendant challenges, the HRE [ (Hawaii Rules of Evidence) ] shall apply, and the court shall expressly decide before the sentencing whether the State satisfied its burden of proving to the reasonable satisfaction of the court that the opposite of the defendant's challenge is true. Step five, if the court is aware of the defendant's prior uncounseled or otherwise invalid criminal conviction(s), it shall not impose or enhance a prison sentence prior to expressly stating on the record that it did not consider it or them as a basis for the imposition or enhancement of a prison sentence. *Id.*

*Id.* at 386–87, 173 P.3d at 533–34. The ICA then reviewed applicable Colorado law to determine the "maximum possible term of imprisonment" for the prior conviction:

> Under Colorado's sentencing scheme relevant to Heggland's Colorado conviction, a defendant convicted of a felony was subject to penalties that included both a presumptive range of imprisonment and a mandatory parole term. CRS § 18–1–105(1)(a)(V)(A) (1996).[12] A defendant sentenced to incarceration was required to serve an additional period of mandatory parole, the length of which depended on the class of felony committed by the defendant. *Id.*[13] The period of the mandatory parole could not be waived or suspended by either the trial court or the offender. CRS § 18–1–105(1)(a)(V)(B) (1996). The state board of parole, however, had the authority to discharge the offender at any time during the parole period upon a determination that he or she had been sufficiently rehabilitated and could no longer benefit from parole supervision. *Id.;* CRS § 17–22.5–403(8) (1996).
>
> Heggland's offense of Conspiracy to Commit Aggravated Robbery was a class 4 felony under Colorado law. CRS §§ 18–4–302 and 18–2–206 (1996). It carried a presumptive sentencing range of two to six years of imprisonment and a mandatory parole term of three years. CRS § 18–1–105(1)(a)(V)(A).[14] The presentence report shows that Heggland was sentenced to five years of incarceration and three years of mandatory parole for his Colorado conviction.
>
> Colorado's mandatory parole is different than parole under traditional sentencing schemes. Under traditional sentencing schemes, an inmate who is released on parole exchanges a portion of his or her prison term for a period of non-imprisonment custody. *Craig v. People,* 986 P.2d 951, 958 n. 3 (Colo.1999). This is basically how parole operates in Hawai'i. In Colorado, however, even a prisoner who serves his or her entire prison sentence is still subject to the conditions of parole for the additional mandatory period. *Id.* The mandatory parole term can be revoked and the defendant reincarcerated for any period of time remaining on the defendant's parole term. CRS § 17–22.5–403(8). Because mandatory parole is part of the defendant's sentence, reincarceration after a parole violation is not a new prison sentence but incarceration on an already imposed sentence. *People v. Barber,* 74 P.3d 444, 446 (Colo.Ct.App.2003).

---

[12] Colorado Revised Statutes (CRS) § 18–1–105 (1996) was subsequently amended in ways not material to this appeal and was relocated to CRS § 18–1.3–401. 2002 Colo. Sess. Laws, Ch. 318, § 2.

[13] CRS § 18–1–105(1)(a)(V)(D) (1996) provided, in relevant part, as follows:

> The mandatory period of parole imposed pursuant to sub-subparagraph (A) of this subparagraph (V) shall commence immediately upon the discharge of an offender from imprisonment in the custody of the department of corrections. If the offender has been granted release to parole supervision by the state board of parole, the offender shall be deemed to have discharged the offender's sentence to imprisonment provided for in sub-subparagraph (A) of this subparagraph (V) in the same manner as if such sentence were discharged pursuant to law. When an offender is released by the state board of parole or released because the offender's sentence was discharged pursuant to law, the mandatory period of parole shall be served by such offender.

[14] Under CRS §§ 18–1–105(6) and (9) (1996), the trial court had the authority to impose a sentence of incarceration up to twice the maximum term authorized by the presumptive range if it concluded that extraordinary aggravating circumstances were present.

*Id.* at 387–88, 173 P.3d at 534–35. Based on the evidence of conviction, and its review of Colorado's sentencing scheme, the ICA stated that it was "undisputed that Heggland was still serving the mandatory parole term for his Colorado conviction at the time that he committed the [PPD offense]" and that "[u]ntil Heggland's mandatory period of parole expired, he could have been sent back to

prison for a parole violation." *Id.* at 388, 173 P.3d at 535. Accordingly, the ICA concluded that Heggland's "instant Hawaii felony was committed 'within the maximum term of imprisonment possible' after his Colorado conviction, as required by HRS § 706–606.5(2)(f)." *Id.* The court vacated the sentence portion of the judgment and remanded to the circuit court for resentencing consistent with its opinion. *Id.*

Heggland subsequently filed this timely Application.

## II. STANDARDS OF REVIEW

### A. *Statutory Interpretation*

Statutory interpretation is "a question of law reviewable *de novo.*" *State v. Levi,* 102 Hawai'i 282, 285, 75 P.3d 1173, 1176 (2003) (quoting *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996)). This court's statutory construction is guided by established rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

*Peterson v. Hawaii Elec. Light Co., Inc.,* 85 Hawai'i 322, 327–28, 944 P.2d 1265, 1270–71 (1997), *superseded on other grounds by* HRS § 269–15.5 (Supp.1999) (block quotation format, brackets, citations, and quotation marks omitted).

### B. *Sentencing*

" 'The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed.' " *State*

*v. Aplaca,* 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001) (quoting *State v. Jenkins,* 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000)).

> "[F]actors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions." And, "[g]enerally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant."

*State v. Kahapea,* 111 Hawai'i 267, 278, 141 P.3d 440, 451 (2006).

### C. *Admissibility of Evidence*

[D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

*Kealoha v. County of Hawai'i,* 74 Haw. 308, 319–20, 844 P.2d 670, 676 (1993).

## III. DISCUSSION

### A. *The ICA Erred in Considering the Mandatory Parole Portion of Heggland's Colorado Conviction as Part of the "Maximum Term of Imprisonment Possible."*

Heggland asserts that the ICA's analysis of Colorado's sentencing law within the context of HRS § 706–606.5 is incorrect. We agree.

Heggland was charged with Conspiracy to Commit Aggravated Robbery in violation of Colo.Rev.Stat. § 18–2–201(1). As a class 4 felony under Colorado law, *see* Colo.Rev.Stat. §§ 18–4–302 & 18–2–206 (Westlaw, Colorado Statutes 1996–Annotated), it carried a presumptive sentencing range of two to six years of imprisonment and a mandatory pa-

role term of three years. Colo.Rev.Stat. § 18–1–105(1)(a)(V)(A)(Westlaw, Colorado Statutes 1996–Annotated). According to the presentence diagnosis and report, Heggland was sentenced to five years of incarceration and three years of mandatory parole.

If Heggland's PDD offense falls within the proviso of HRS § 706–606.5(2)(f), a mandatory minimum term of imprisonment of one year and eight months would apply to Heggland based on this prior Colorado conviction. HRS § 706–606.5(1)(a)(iv). HRS § 706–606.5(2)(f) states that mandatory minimums should not apply "unless the instant felony offense was committed ... within the maximum term of imprisonment possible after a prior felony conviction of another jurisdiction." HRS § 706–606.5(2)(f). The ICA concluded that the "mandatory parole" portion of Heggland's Colorado conviction was part of the "maximum term of imprisonment possible." Specifically, the ICA stated that "[b]ecause mandatory parole is part of the defendant's sentence, reincarceration after a parole violation is not a new prison sentence but incarceration on an already imposed sentence." *Id.* at 387–88, 173 P.3d at 534–35. Since Heggland "could have been sent back to prison for a parole violation," the ICA reasoned that his PDD offense was committed "within the maximum term of imprisonment possible" after the Colorado conviction. *Id.* at 388, 173 P.3d at 535.

The ICA's inclusion of the mandatory parole portion of Heggland's sentence as part of the "maximum term of imprisonment possible" misconstrues HRS § 706–606.5(2)(f) and is inconsistent with how Colorado law treats the mandatory parole portion of criminal sentences in that state.

### 1. The ICA Misinterpreted the Phrase "Maximum Term of Imprisonment Possible."

As an initial matter, we examine the statutory phrase "maximum term of imprisonment possible" in HRS § 706–606.5(f). In Colorado's sentencing scheme, a prisoner serves a term of imprisonment followed by a mandatory period of parole. *See* Colo.Rev.Stat. § 18–1–105(1)(a)(V)(A)(Westlaw, Colorado

Statutes 1996–Annotated). As the ICA explained,

Colorado's mandatory parole is different than parole under traditional sentencing schemes. Under traditional sentencing schemes, an inmate who is released on parole exchanges a portion of his or her prison term for a period of non-imprisonment custody. *Craig v. People,* 986 P.2d 951, 958 n. 3 (Colo.1999). This is basically how parole operates in Hawai'i. In Colorado, however, even a prisoner who serves his or her entire prison sentence is still subject to the conditions of parole for the additional mandatory period. *Id.*

116 Hawai'i at 387, 173 P.3d at 535.

Conceptually, a term of parole is distinct from a term of imprisonment. *See, e.g.,* HRS § 706–670 (Supp.2006) ("A sentence to an indeterminate term of imprisonment under this chapter includes as a separate portion of the sentence a term of parole or of recommitment for violation of the conditions of parole."). By failing to distinguish the two penal concepts, the ICA erroneously concluded that Heggland's mandatory parole term was part of the "maximum term of imprisonment possible" for his offense. According to the ICA's logic, because Heggland could be reincarcerated for violating a term of his mandatory parole, and was still serving that term at the time of the PDD offense, the offense was committed "within the maximum term of imprisonment possible." 116 Hawai'i at 388, 173 P.3d at 535. The ICA's interpretation does not properly heed the words of the statute.

In Hawai'i, the phrase "term of imprisonment" carries a particular meaning. After convicting a defendant, a trial court may sentence the defendant to a term of imprisonment as authorized by part IV of HRS chapter 706. *See* HRS § 706–605(c) (1993); HRS chapter 706, part IV (entitled "Imprisonment"). Hawai'i has an "indeterminate" sentencing system, under which the court sentences a convicted defendant to a maximum term of imprisonment but leaves the precise term to be fixed by the Hawai'i Paroling Authority (HPA). Defendants who commit class B felonies, for example, are sentenced to an indeterminate term with a

maximum length of imprisonment of 10 years. HRS § 706–660 (1993). Outside of any mandatory minimum sentences required by law, the HPA determines the minimum length of imprisonment. *Id.;* HRS § 706–669 (1993 & Supp.2007). In Hawai'i, any period of parole must end after the "maximum term of imprisonment" expires. HRS § 706–669(5). *See also Williamson v. Hawaii Paroling Auth.,* 97 Hawai'i 183, 191, 35 P.3d 210, 218 (2001) (explaining that "by setting [a prisoner's] minimum term at a period equal to his maximum sentence," the HPA "renders a prisoner effectively ineligible for parole"). Therefore, in Hawai'i, a convicted defendant is sentenced to a "term of imprisonment" that corresponds to the statutory maximum for the crime but only serves that portion of the maximum term set by the HPA.[5] While any parole served takes place within the duration of the maximum "term of imprisonment," the term of imprisonment and term of parole remain distinct concepts.

■■■ The phrase "maximum term of imprisonment possible" in HRS § 706–606.5(2)(f) therefore refers to the maximum term of imprisonment to which a court in a foreign jurisdiction may *possibly* sentence a convicted defendant. The ICA misreads the phrase to include any *possible imprisonment* that may arise from a sentence, even if not part of the original "term of imprisonment." This construction incorrectly interprets the term "possible" to modify "imprisonment" rather than "maximum term of imprisonment." The latter interpretation is supported by reading the phrase as a whole and is more consistent with the context of Hawai'i sentencing law. Therefore, the ICA's interpretation does not comport with the way the term "maximum term of imprisonment" functions in Hawai'i law. By its use of the term "possible," the legislature has made clear that the mandatory minimum statute applies when an offense is committed within the maximum term of imprisonment to which a foreign court possibly could have sentenced a convicted defendant, rather than the actual term of imprisonment the defendant was required to serve.[6]

## 2. A Mandatory Parole Term under Colorado Law Is Distinct from a "Term of Imprisonment."

Applying this understanding of "maximum term of imprisonment possible" to Colorado law, it is clear that the phrase does not include the mandatory parole portion of a Colorado convicted defendant's sentence. The ICA mistakenly reasoned as follows:

> The mandatory parole term can be revoked and the defendant reincarcerated for any period of time remaining on the defendant's parole term. CRS § 17–22.5–403(8). Because mandatory parole is part of the defendant's sentence, reincarceration after a parole violation is not a new prison sentence but incarceration on an already imposed sentence. *People v. Barber,* 74 P.3d 444, 446 (Colo.Ct.App.2003).

116 Hawai'i at 387–88, 173 P.3d at 534–35. The ICA concluded that because Heggland "could have been sent back to prison for a parole violation" until his "mandatory period of parole expired," "his instant Hawaii felony was committed 'within the maximum term of imprisonment possible' after his Colorado conviction." *Id.* at 388, 173 P.3d at 535.

The ICA reached this conclusion by erroneously focusing on the fact that Colorado's mandatory parole component is part of the same *sentence* as the incarceration component, rather than focusing on whether it con-

---

**5.** Extended term sentencing in Hawai'i operates in the same way, with the trial court setting a maximum extended sentence and the HPA fixing the actual term to be served. *See* HRS § 706–661 (Supp.2007).

**6.** Reviewing the structure of the statute is also instructive. For prior Hawai'i offenses the mandatory minimum statute will apply if the present offense is committed within a set amount of years from the prior felonies, ranging from five to twenty. *See* HRS § 706–606.5(2)(a)–(e). For felony convictions in other jurisdictions, however, the statute uses the "maximum term of imprisonment possible" as the applicable time period. This approach is sensible, in that it relies on the foreign jurisdiction's own assessment of the severity of the crime to determine whether mandatory minimum sentences should apply to a repeat offender, rather than attempting to fit the offender's felony from another jurisdiction within the grading system used for Hawai'i prior felonies.

stituted part of the maximum term of imprisonment. *See id.* at 387–88, 173 P.3d at 534–35 ("Because mandatory parole is part of the defendant's sentence, reincarceration after a parole violation is not a new prison *sentence* but *incarceration on an already imposed sentence.*" (Emphasis added.)). The issue is not whether Heggland was still serving some part of his *sentence,* but whether the PDD offense was committed within the "maximum *term of imprisonment* possible." HRS § 706–606.5(2)(f) (emphasis added).[7]

The law in Colorado also distinguishes the mandatory parole component from the imprisonment component of a criminal sentence. The sentencing statute relevant to Heggland's Colorado offense states that "[t]he mandatory period of parole … shall commence immediately upon the *discharge of an offender from imprisonment* in the custody of the department of corrections." Colo. Rev.Stat. § 18–1–105(1)(a)(V)(D)(Westlaw, Colorado Statutes 1996—Annotated) (emphasis added). Moreover, "[i]f the offender has been granted release to parole supervision by the state board of parole, the offender *shall be deemed to have discharged the offender's*

*sentence to imprisonment* … in the same manner as if such sentence were discharged pursuant to law." *Id.* (emphasis added). The mandatory period of parole must also be served "[w]hen an offender is released by the state board of parole or released because the offender's sentence was discharged pursuant to law." *Id.* Another statutory provision specifies that "[n]o person sentenced to a correctional facility for the commission of a felony shall be subjected to *imprisonment for a term exceeding the term provided by the statute fixing the length* of the sentence for the crime of which the person was convicted and for which the person was sentenced." *See id.* § 16–11–302 (Westlaw, Colorado Statutes 1996—Annotated) (current, unchanged version at § 18–1.3–404 (2007)). These statutory provisions make clear that the mandatory period of parole was envisioned by the Colorado legislature as an entity separate from the term of imprisonment. Moreover, because mandatory parole can be served even after the maximum range of a prison sentence is completed, it can exist outside of the "maximum term of imprisonment possible."[8]

---

**7.** The legislative history of the relevant portion of HRS § 706–606.5 suggests that the statutory focus was on offenses committed within the maximum *term of imprisonment,* rather than within the broader sentence. Mandatory minimum sentencing for repeat offenders whose prior crimes are from another jurisdiction was added to Hawai'i law in 1987. *See* 1987 Haw. Sess. L. Act 181 § 3 at 408–09. When considering the bill, a standing committee of the House stated that it "adds language clarifying that when … foreign crimes are felonies under the Hawaii Penal Code, (1) they are 'prior felonies' within reach of the statute, and (2) the period within which the repeat offender statute applies is the maximum possible *prison term* of the prior foreign conviction." Hse. Stand. Comm. Rep. No. 486, in 1987 House Journal, at 1328–29 (emphasis added). A standing committee of the Senate expressed a similar understanding of the bill, stating in its report that the law "also provides that the period within which the repeat offender statute applies is the maximum possible *prison term* of the prior foreign conviction." Sen. Stand. Comm. Rep. No. 1130, in 1987 Senate Journal, at 1393 (emphasis added). *See also* Commentary on § 706–606.5 ("Act 181, Session Laws 1987 … added, to the list of applicable periods, that the period within which the repeat offender statute applies is the maximum possible prison term of the prior felony conviction of another jurisdiction."). These statements confirm that both chambers of the legislature viewed the applicable period to be

a term of imprisonment, rather than a broader sentence that could lead to later reincarceration outside of the statutory "maximum term of imprisonment."

**8.** Each Colorado felony carries a presumptive range of penalties to which a trial court may sentence a defendant. *See* Colo.Rev.Stat. § 18–1–105(1)(a)(V)(D)(Westlaw, Colorado Statutes 1996–Annotated). However, unlike Hawai'i, Colorado has a determinate sentencing system in which the trial court specifies a fixed term of imprisonment. *See id.* § 16–11–302 (Westlaw, Colorado Statutes 1996–Annotated) (current version at § 18–1.3–404 (2007)) ("Unless otherwise provided by law … courts sentencing any person for the commission of a felony to the custody of the executive director of the department of corrections *shall fix a definite* term as provided by section 18–1–105, C.R.S. The persons so sentenced shall be imprisoned and discharged as provided by other applicable statutes."). The upper range of penalty therefore serves as the "maximum term of imprisonment possible." *See id.* ("No person sentenced to a correctional facility for the commission of a felony shall be subjected to imprisonment for a term exceeding the term provided by the statute fixing the length of the sentence for the crime of which he was convicted and for which he was sentenced."). *See also id.* § 16–11–304 (Westlaw, Colorado Statutes 1996–Annotated) (current version at

Caselaw from Colorado confirms that the mandatory parole period is distinct from the term of imprisonment to which convicted defendants may be sentenced in that state. As the ICA points out, "mandatory parole [in Colorado] is part of the defendant's sentence," so that "reincarceration after a parole violation is not a new prison sentence but incarceration on an already imposed sentence." *See* 116 Hawai'i at 387–88, 173 P.3d at 534–35 (citing *People v. Barber*, 74 P.3d 444, 446 (Colo.Ct.App.2003)). *Accord People v. Norton*, 63 P.3d 339, 344 (Colo.2003) ("[A]lthough under mandatory parole the length of the parole term ceased to be related to any unserved portion of confinement in the DOC [Department of Corrections] and instead became statutorily predetermined, there is no indication in the legislative history or otherwise that parole did not continue to be part of an offender's 'sentence.' Although not served within the confines of an institution, parole is nevertheless a clear infringement on an offender's liberty, and thus logically part of his or her sentence."). However, notwithstanding this fact, the Supreme Court of Colorado has made clear that "[a]lthough mandatory parole is part of the overall 'sentencing regime,' *it is a distinct element of sentencing, separate from the terms of imprisonment or length of sentence imposed by the trial court.*" *People v. Johnson*, 13 P.3d 309, 313 (Colo.2000) (emphasis added).[9]

§ 18–1.3–408 (2007)) ("When a person has been convicted of a felony and a sentence of imprisonment imposed, the court imposing the sentence shall fix a definite term of imprisonment, which shall be not longer than the terms authorized in section 18–1–105, C.R.S.").

9. In *People v. Perea*, a Colorado Court of Appeals considered whether a defendant's sentence for a felony committed when the defendant was already serving a mandatory period of parole for a prior crime should be served concurrently with the sentence for the prior offense. 74 P.3d 326, 334–35 (Colo.Ct.App.2002) (cited in *Barber*, on which the ICA relied). In the course of answering that question, the appellate court explained the development of the mandatory parole period within the broader context of Colorado's sentencing laws:

> In 1993, the General Assembly adopted a mandatory parole scheme for convicted felons. Colorado caselaw recognizes that under this scheme *the prison term and parole term are separate components of the sentence*, namely, a determinate period of incarceration and a predetermined period of parole.
>
> A parolee is conditionally released from actual custody, but in the contemplation of the law, still is in legal custody and constructively a prisoner of the state. The revocation of the parole results in the reincarceration of the parolee. Thus, reincarceration for a parole violation is incarceration on an already imposed sentence, and a defendant convicted of a felony committed while on parole may receive a sentence that runs consecutively to any reincarceration that may be imposed if the defendant's parole is revoked.
>
> ....
>
> [Section] 18–1–105(1)(a)(V)(E) does not expressly address how mandatory parole is imposed on an offender who is reincarcerated after conviction for escape from mandatory parole. Therefore, to avoid changing the law further than is expressly declared or necessarily implied, we decline to apply the statute

when an offender is sentenced for the commission of a felony while serving mandatory parole as part of an already imposed sentence for a prior felony.

> Mandatory parole is required, at least in part, to insure the post-incarceration supervision of offenders who were not offered, or chose not to accept, parole release prior to the completion of their entire sentence to incarceration. *The term of mandatory parole does not even commence until the sentence of incarceration has been fully discharged. There is a distinct difference between the mandatory parole period and the period of reincarceration following violation of the conditions of parole.* Indeed, when a parolee is reincarcerated following a parole violation, his or her parole is considered to be extinguished. Thus, once parole is revoked, it ceases to exist. *The offender no longer is serving a period of parole, but instead is serving a penalty period of confinement for the parole violation.*
>
> Consequently, when a defendant's mandatory parole is revoked, that defendant is no longer serving mandatory parole, but rather *another period of incarceration*. As such, the imposition of a consecutive sentence plus another period of mandatory parole for escape does not violate § 18–1–105(1)(a)(V)(E) because the mandatory period of parole from the first conviction has been extinguished by the parole revocation.

*Id.* at 334–35 (emphases added) (citations and quotation marks omitted). This discussion makes clear that reincarceration for violating the terms of mandatory parole, while stemming from the same sentence, is not part of the same initial term of imprisonment. Nor is such reincarceration part of the maximum term of imprisonment to which the initial trial court could have sentenced the defendant. Rather, it is more aptly described as a "penalty period of confinement," and constitutes "another period of incarceration" distinct from the initial term of imprisonment. *See id.* at 335.

Therefore, the possibility that a convicted defendant may be reincarcerated for violating the mandatory period of parole does not bring that period within the "maximum terms of imprisonment possible" to which the trial court may have sentenced the defendant.

HRS § 706–606.5(2)(f) is a broad statutory provision, encompassing within its reach prior felonies committed in any jurisdiction outside of Hawai'i. In crafting it, the legislature did not specifically state how to treat prior convictions from jurisdictions with sentencing schemes different from Hawai'i, such as Colorado. Rather, the legislature applied a concept familiar in Hawai'i law—the "maximum term of imprisonment possible"—as a way to measure the gravity of prior offenses from other jurisdictions. In considering how this term should be applied to sentencing schemes that do not fit the Hawai'i mold, it behooves this court to strictly apply the words of the statute, with their focus on "terms of imprisonment," rather than potentially more expansive renderings to which the legislature gave no specific consideration. Therefore, the ICA erred when it interpreted the mandatory parole term required by Colorado law to be served *after* the term of imprisonment as part of the "maximum term of imprisonment possible," even though reincarceration could subject a parolee to additional time in prison.

B. *The ICA Did Not Err in Concluding That the Circuit Court Erroneously Denied the Prosecution's Sentencing Motion on the Grounds That the Prosecution Allegedly Failed to Prove That Heggland Was Represented by Counsel at the Time of His Prior Conviction or to Prove the Prior Conviction by Satisfactory Evidence*

Heggland argues that the ICA erred in concluding that he did not properly preserve a challenge pursuant to *Sinagoga*. Specifically, Heggland maintains that he did preserve such a challenge, contending that (1) the defense "contested whether Heggland's prior conviction qualified him" for mandatory minimum sentencing "on five separate occasions," and that (2) the fact that the court,

rather than Heggland himself, raised "the issue of an uncounseled prior conviction ... is a distinction without meaning," and should have been sufficient to shift the burden of proof to the prosecution.

1. **Whether Heggland Raised a Good-faith Challenge to His Conviction Under *Sinagoga*.**

 Heggland's argument that he properly challenged his conviction under *Sinagoga* is without merit. As the prosecution correctly points out in its Memorandum in Opposition to Heggland's Application, Heggland's "claims of challenge recited in his Application ... go toward the applicability of the mandatory minimum statute to him based upon his prior Colorado conviction," rather than "whether [Heggland] made a good faith challenge to his prior conviction on the bases permitted by *Sinagoga* and its progeny."

In *State v. Afong*, 61 Haw. 281, 602 P.2d 927 (1979), this court held that "[u]nless conceded by the defendant, the state is required to show, by evidence satisfactory to the court, the fact of the defendant's prior conviction, as well as the fact of his [or her] representation by counsel, or the waiver thereof, at the time of his [or her] prior conviction." *Id.* at 282, 602 P.2d at 929 (citation omitted and emphasis added). As discussed by the ICA in its summary of the applicable law,

In [*Sinagoga*], a majority of [the ICA] established a procedure for determining whether a prior conviction "was conceded by the defendant" for purposes of applying the holding of *Afong*. The majority held that in ordinary sentencing situations, which includes mandatory minimum sentencing under HRS § 706–606.5, after the sentencing judge has been informed pursuant to a presentence diagnosis and report or otherwise of a defendant's prior conviction(s),

each conviction listed may be used against defendant except those as to which the defendant timely responds with a good faith challenge on the record that the prior criminal conviction was (1) uncounseled, (2) otherwise invalidly en-

tered, and/or (3) not against the defendant.

*Id.* at 445, 918 P.2d at 252.

116 Hawai'i at 383, 173 P.3d at 530. The ICA noted that under step two of the five-step procedure *Sinagoga* established "for trial courts to follow in cases 'where ordinary sentencing procedures are applicable and there is a possibility that the court may use the defendant's prior conviction(s) as a basis for the imposition or enhancement of a prison sentence,'" *id.* (quoting *Sinagoga*, 81 Hawai'i at 447, 918 P.2d at 254),

> if the defendant contends that one or more of the reported prior criminal convictions was (1) uncounseled, (2) otherwise invalidly entered,[7] and/or (3) not against the defendant, the defendant shall, prior to the sentencing, respond with a good faith challenge on the record stating, as to each challenged conviction, the basis or bases for the challenge.

---

[7] In *State v. Veikoso*, 102 Hawai'i 219, 74 P.3d 575 (2003), the Hawai'i Supreme Court essentially limited a defendant's ability to collaterally attack a prior conviction to an attack based on a claim that the conviction had been obtained in violation of the right to counsel. *Id.* at 226–27, 74 P.3d at 582–83. For purposes of its analysis, the court defined "collateral attack" as a defendant's "attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying such judgment or decree." *Id.* at 223, 74 P.3d at 579. Given the limits it imposed on collateral attacks of prior convictions, the supreme court stated that the language in [*Sinagoga*] permitting a defendant to challenge a prior conviction on the ground that it was "otherwise invalidly entered" should be disregarded. *Veikoso*, 102 Hawai'i at 227 n. 8, 74 P.3d at 583 n. 8. Pursuant to *Veikoso's* modification of the *Sinagoga* procedure, a defendant is permitted to challenge a prior conviction on the grounds that it was (1) uncounseled and/or (2) not against the defendant.

**10.** At this hearing, Deputy Public Defender Michael Ebesugawa appeared to ask the court for a

*Id.* at 383–84, 173 P.3d at 530–31 (emphasis omitted).

As found in the ICA opinion, Heggland did not raise a good faith challenge to the validity of his prior Colorado conviction on one of the bases permitted in *Sinagoga* and *Veikoso*. *Id.* at 385, 173 P.3d at 532. On the contrary, he affirmatively stipulated that "[a]t the time [Heggland] committed the offenses in the instant case, he had [a] prior felony conviction in Colorado (Department of Corrections No. 110596) for Conspiracy to Commit Aggravated Robbery." *Id.*

Heggland's citations to the hearing transcript in his Application do not show otherwise, nor bring forth any statements by defense counsel not covered in the ICA's opinion. At the July 18, 2005 plea hearing, defense counsel stated that "we will be opposing any, um, imposition of mandatory minimum terms of imprisonment for Mr. Heggland." At the November 2, 2005 hearing, defense counsel summarized its argument to be that Heggland "wasn't within the maximum term of imprisonment when he committed this crime."[10] At the December 7, 2005 hearing, Heggland's counsel stipulated to the fact that Heggland had a prior Colorado conviction, and also agreed with the court that the only question left unresolved was "the maximum term for this particular offense," which counsel admitted was a matter of law. At the January 17, 2006 hearing cited by Heggland in his Application, the prosecution acknowledged that "defense counsel was never agreeing that the mandatory minimum was gonna be imposed." None of these statements indicate that Heggland was raising a "good-faith challenge" to the validity of his Colorado conviction under *Sinagoga*.

Rather, his argument focused on whether he was within the time frame of "maximum term of imprisonment" for the Colorado conviction at the time he committed the PDD offense. As such, the ICA did not err in holding that the circuit court "erred in denying the State's motion based on the State's alleged failure to prove that Heggland was

continuance of sentencing, so that lead counsel David Kuwahara could be present.

represented by counsel at the time of his prior conviction or to prove the prior conviction by satisfactory evidence." 116 Hawai'i at 386, 173 P.3d at 533.

### 2. Whether the Circuit Court's "Raising" of the Validity of Heggland's Prior Conviction Shifted the Burden of Proof to the Prosecution.

Heggland's contention that the prosecution was required to "establish sufficient evidence to convince the court" of the counseled nature of his prior Colorado conviction because the circuit court raised the issue is wholly without merit. As the ICA's opinion makes clear, the circuit court misinterpreted the five-step procedure outlined in *Sinagoga* by requiring the prosecution to prove the validity of Heggland's prior conviction in the absence of a good-faith challenge by Heggland.[11]

"If the defendant contends that one or more of the reported prior criminal convictions was ... uncounseled ... the defendant *shall*, prior to the sentencing, *respond with a good faith challenge on the record stating, as to each challenged conviction, the basis or bases for the challenge.*" *Sinagoga*, 81 Hawai'i at 447, 918 P.2d at 254 (emphases added). As Heggland failed to make such a good-faith challenge, the ICA did not err in concluding that the circuit court erred in denying the prosecution's motion on this ground.

### C. *Heggland's Mandatory Minimum Sentence Should Be Sustained Based On the Maximum Term of Imprisonment for his Colorado Sentence Without Including the Mandatory Parole Period.*

 Although the ICA incorrectly interpreted Heggland's period of mandatory pa-

role—which expired on November 21, 2004, after the PDD offense was committed—to be part of the "maximum term of imprisonment possible," the question of the applicability of mandatory minimum sentencing to Heggland is not extinguished.[12]

In order for the mandatory minimum statute to apply, Heggland's PDD offense must have been committed within "the maximum term of imprisonment possible after a prior felony conviction of another jurisdiction," *viz.*, Heggland's Colorado conviction. HRS § 706–606.5(2)(f). Heggland's offense occurred on August 28, 2003. Although Heggland stipulated that he had a prior felony conviction in Colorado for Conspiracy to Commit Aggravated Robbery, he did not stipulate to further facts about the conviction. At the time, Conspiracy to Commit Aggravated Robbery in Colorado had a maximum term of imprisonment of six years. Colo.Rev.Stat. § 18–1–105(1)(a)(V)(A) (Westlaw, Colorado Statutes 1996—Annotated).

In its motion for sentencing, the prosecution argued that "[e]ven if the Court, uses the maximum term of imprisonment (six years from Defendant's sentence on November 14, 1997 = November 13, 2003) and ignores the mandatory period of parole Defendant still committed the crimes in this case ... before November 13, 2003," such that HRS § 706–606.5(2)(f) would apply.

Heggland contends, however, that the ICA relied upon incompetent evidence of his Colorado conviction, and that the prosecution failed to establish "sufficient proof that Heggland's conviction fell within the ambit of HRS § 706–606.5(2)(f)."

Whether the mandatory minimum statute applies in this case depends on the date on

---

**11.** Because of the circuit court's error, we do not agree with the concurring opinion's intimation that *Sinagoga* is irrelevant to this case. The circuit court erroneously required the prosecution to prove that Heggland's prior conviction was counseled in the absence of any challenge by Heggland to the counseled nature of that conviction. The five-step analysis in *Sinagoga* provides the appropriate framework for analyzing whether the circuit court erred in discrediting Heggland's conviction on this ground. On the other hand, we agree that *Sinagoga* does not govern whether there was sufficient evidence of a prior

conviction to impose a mandatory minimum term of imprisonment under HRS § 706–606.5, which we discuss *infra* in Section III.C.

**12.** As the ICA notes, the circuit court did not itself reach the question of whether Heggland's current offense falls within the time frame required by HRS § 706–606.5(2)(f) to apply mandatory minimum sentencing, because it found that Heggland's prior conviction had not been established. 116 Hawai'i at 386, 173 P.3d at 533.

which Heggland's term of imprisonment for his Colorado conviction began ("the sentence date"), and the sufficiency of the evidence establishing that date. As the name implies, mandatory minimum sentencing is not discretionary with the trial court. *See State v. Delmondo*, 67 Haw. 531, 533, 696 P.2d 344, 346 (1985) ("If [the defendant] is found to be a repeat offender, the sentencing court is bound to impose the applicable mandatory minimum term of imprisonment."). However, the trial court must nevertheless assess whether the statute applies, based on arguments and the evidence proffered by the prosecution or stipulated to by the defendant.

As made clear in the discussion below, the trial court abused its discretion in refusing to credit the evidence of Heggland's prior Colorado conviction, given that Heggland stipulated to his prior conviction and failed to specifically challenge the facts about the conviction apparent from that evidence.

### 1. The Evidence at Issue

There are three pieces of evidence that bear on the sentence date of Heggland's Colorado conviction: (1) the document entitled "Integrated Colorado Online Network (ICON)," included as Exhibit 2 to the prosecution's sentencing motion [hereinafter "ICON document"]; (2) the testimony of parole officer Reginald Une; and (3) the presentence diagnosis and report [hereinafter

"presentence report"] filed in the circuit court on January 17, 2006.

The primary documentary evidence of the date of Heggland's Colorado conviction is the ICON document, which includes a line stating "Sentence Date ... SCRT 11/14/1997", and is scattered with at least three other references to that date.[13] The document was introduced into evidence by the prosecution, but was questioned by Heggland's counsel and by the court, and the matter was left unresolved before parole officer Une was called to testify.[14] Heggland did not specifically challenge any of the information contained in the ICON document.

Une, in his testimony, focused on what he called the "controlling discharge date," referring to the end of Heggland's period of mandatory parole in November 2004. However, he was also asked about the date of Heggland's Colorado conviction. First, in response to the prosecution's question, "What was the date of conviction on the aggravated conspiracy to commit robbery?," Une replied "November 14, 1997." Heggland's counsel objected and on cross-examination asked Une the basis of this information. Une replied that it was based on the "documentation that the State of Colorado sent us ... a thing called the interstate compact packet that they sent to us."[15] Une testified that he did not receive from Colorado a copy or certified copy of the judgment for the prior case, and responded negatively when asked

---

13. These include "Case Close Date: 11/14/1997"; the date listed in a table under "SNT DATE" next to the description "Sentence by Court"; and the date listed next to "Plea of Guilty" and "Guilty," among other less clear references. The ICA concluded that "[t]he document suggests ... that [Heggland] committed the offense of 'Criminal Conspiracy' to commit 'Aggravated Robbery' with the use of a deadly weapon on December 18, 1996 and *was sentenced on November 14, 1997* to serve a five-year term of imprisonment, with credit for time served of 323 days." 116 Hawai'i at 378 n. 5, 173 P.3d at 525 n. 5 (emphasis added).

14. Heggland's counsel stated, "I think the case law says they have to show a valid prior conviction," after which colloquy ensued in which the court raised the fact of the stipulation but questioned the lack of stipulation with respect to the date of conviction. The prosecution contended that the ICON document "would bear that out."

The court continued to express doubt, stating "I would expect that some kind of a certified court document from Colorado with respect to evidence of conviction if the dates are in question," and classifying the document as an "abstract of court records." The prosecution, in turn, asserted that the document received from the Colorado court was sufficient proof of conviction, contending that "any kind of official court record kept in the ordinary course of business" would suffice. At this point the court suggested that Une take the stand.

15. Although further testimony does not clarify the nature of the "interstate compact packet" referred to, it is likely a reference to the Interstate Compact for the Supervision of Adult Offenders, codified in HRS Chapter 353B. The packet appears to be the materials regarding Heggland's criminal record sent from Colorado pursuant to the interstate compact.

whether he was familiar with the sentencing laws of the state of Colorado.

Lastly, the presentence report [16] contains the following information regarding Heggland's Colorado conviction:

[Heggland] said he was sentenced in 1997 for the Arizona case first. (It is not known if he was sentenced as an adult.) He was then extradited to Colorado and arrested on November 5, 1997. *On November 14, 1997, he was sentenced to five years [sic] prison for Conspiracy to Commit Aggravated Robbery (Count III)*, concurrent with his Arizona sentence, with credit for 323 days time served. The remaining Counts were dismissed. He noted that he got a stiffer sentence than his codefendants as he was the one who possessed the handgun. After sentencing in Colorado, he said he was returned to Arizona to serve his prison term. Due to misconducts [sic], he ended up serving a longer sentence, four years nine months.

The presentence report stated that Heggland's record in Colorado was contained in the NCIC (National Crime Information Center) database, and it includes the ICON document as an attachment. References to the presentence report were made at the January 17, 2006 sentencing hearing by the court and counsel, but Heggland did not raise any challenge to the sentence date contained in the presentence report.[17]

### 2. Heggland's Evidentiary challenges

Heggland raises two basic challenges to the use of the evidence proffered to establish the sentence date of Heggland's Colorado conviction, arguing (1) that portions of this evidence (Une's testimony and the presentence report) are hearsay, and (2) that the

circuit court's discrediting of the evidence in Exhibit 2 (the ICON document) should not be disturbed by the appellate courts.

> a. *the Hawai'i Rules of Evidence do not apply to ordinary sentencing proceedings.*

■ Heggland's hearsay argument is misplaced. As a general matter, the Hawai'i Rules of Evidence (HRE) do not apply to sentencing proceedings. *See* Hawai'i Rules of Evidence Rule 1101(d)(3) ("The rules ... do not apply in ... sentencing...."). This court has acknowledged an exception to this rule, based on constitutional concerns, when a defendant raises a proper good-faith challenge to a prior conviction used as a basis for the imposition or enhancement of a prison sentence. *See Sinagoga*, 81 Hawai'i at 447, 918 P.2d at 254 (holding that when a prior conviction is challenged on one of the proper grounds, "the HRE shall apply, and the court shall expressly decide before the sentencing whether the State satisfied its burden of proving to the reasonable satisfaction of the court that the opposite of the defendant's challenge is true."); *State v. Mitsuda*, 86 Hawai'i 37, 46, 947 P.2d 349, 358 (1997) (generally endorsing "procedures to be followed where a trial court uses a defendant's prior convictions as a basis for enhancement of sentence" as laid out in *Sinagoga* ). However, as discussed *supra*, Heggland did not raise a proper good-faith challenge to his conviction so as to trigger the application of the HRE under *Sinagoga.* In the absence of such a challenge, HRE Rule 1101(d)(3) governs mandatory minimum sentencing proceedings and the HRE do not apply. *See State v. Freitas*, 61 Haw. 262, 277, 602 P.2d

16. A presentence report must be prepared after conviction and prior to sentencing in all felony cases unless waived. HRS § 706–601 (Supp. 2003). It is prepared by personnel assigned to the court, *see* HRS § 706–602 (1993), and is meant to aid the court in the exercise of its discretionary sentencing authority. *See* HRS § 706–601 cmt. As such, the report is not produced in a trial-like setting or subject to the Hawai'i Rules of Evidence. However, a sealed copy of the report becomes part of the record on appeal when a criminal sentence is challenged. Hawai'i Rules of Appellate Procedure Rule 10(a)(5).

17. The record does reflect, however, that Heggland reviewed the presentence report and requested corrections to it in other matters. At the January 17, 2006 sentencing hearing, Heggland's counsel stated: "Your Honor, we had appeared a couple of times and we put on the record corrections and additions to the PSI [presentence report] and comments.... The only correction would be now Mr. Heggland is 26 years old. We would ask the Court to-well, that would be all the updated corrections, Your Honor."

914, 925 (1979) (holding that "ordinary sentencing procedures should apply" in proceedings to impose mandatory minimum terms of imprisonment); *State v. Drozdowski*, 9 Haw. App. 583, 854 P.2d 238 (1993).

### b. *sufficiency of the evidence*

Heggland's second challenge concerns the standard by which evidence of prior convictions should be measured. Specifically, Heggland contends that because the circuit court, when presented with the ICON document, explicitly stated that it did not "know what it is," likened it to court minutes, and ultimately found that there was "insufficient evidence that [Heggland] was convicted of a class four felony in Colorado," the ICA erred in considering Exhibit 2 in its decision. As discussed above, Exhibit 2, and specifically the ICON document, forms the primary evidence upon which the prosecution relies to establish the sentence date of Heggland's Colorado conviction.[18]

Although the HRE do not apply, the admissibility of prior conviction evidence is governed by a specific statute. HRS § 706–666(2) (1993) provides that "[p]rior conviction may be proved by any evidence, including fingerprint records made in connection with arrest, conviction, or imprisonment, that reasonably satisfies the court that the defendant was convicted."

In several cases, Hawai'i appellate courts have upheld the imposition of mandatory minimum terms of imprisonment based on this standard. In *Freitas*, this court concluded that "[c]ertified copies of both the indictment and the judgment" of the prior conviction of one of the defendants, and testimony of the probation officer assigned to prepare the presentence report for the prior offense constituted "evidence . . . sufficient to prove the fact of the defendant's prior conviction" under HRS § 706–666(2) such that the mandatory minimum sentencing statute would apply. *Freitas*, 61 Haw. at 278, 602 P.2d at 926. In *Drozdowski*, the ICA applied HRS § 706–666(2) to the evi-

dence of a prior conviction from another state as the basis for allowing the imposition of a mandatory minimum term of imprisonment. The defendant had argued that the circuit court's finding that he had a prior felony conviction was not supported by sufficient evidence. 9 Haw.App. at 588, 854 P.2d at 241. At the trial court, the senior probation officer of the fifth circuit testified that he had utilized the National Crime Information System communication network to gather information relevant to the prior conviction, and the prosecution also submitted into evidence a copy of a document titled "CRIMINAL MINUTES—SENTENCE" that was certified by the deputy clerk of a California Superior Court. *Id.* at 589, 854 P.2d at 241. The ICA affirmed the trial court, stating that "[b]ased on the record, we conclude that the evidence reasonably satisfied the court." *Id.* The *Drozdowski* case shows that evidence other than a certified copy of an indictment and judgment can suffice to establish prior convictions from foreign jurisdictions.

However, the evidentiary challenge in the instant case differs from *Drozdowski* and *Freitas* in several key respects. First, unlike the cases reviewed above, the trial court in this case did not accept the prosecution's evidence of Heggland's prior Colorado conviction, in part because the court misinterpreted the prosecution's burden of proof. *See supra* Section III.B. Second, in this case Heggland has stipulated to the existence of his prior Colorado conviction. As such, he does not deny the fact of his conviction, but only objects to the appellate court's gleaning of information *about* that conviction from the evidence in the record.

In light of these special circumstances, it is helpful to elaborate certain principles concerning the evidentiary standard for proof of prior convictions. First, although the standard laid out in HRS § 706–666(2) is based on "reasonable satisfaction" of the court, it does not vest the trial court with unlimited discretion. Rather, because this standard

---

**18.** It is not clear whether the presentence report or Une relied on any source other than the ICON document as evidence of the sentence date. The presentence report includes the document as an attachment. Une referred specifically to the "interstate compact packet" from Colorado in his testimony, *see supra* note 15, which appears to include the ICON document.

asks the trial court to make a "judgment call," on appeal its decision will be reviewed for abuse of discretion. *See Kealoha,* 74 Haw. at 319–20, 844 P.2d at 676. Second, although the cases concern evidence of the *fact of* conviction, the statute's "reasonable satisfaction" standard logically applies as well to *facts about* the conviction, such as the conviction date. Third, although certified copies of judgments and/or indictments may be the preferred evidentiary basis to establish a prior conviction, especially with regards to convictions in foreign jurisdictions, *cf. State v. Buffalo,* 4 Haw.App. 646, 649, 674 P.2d 1014, 1017 (1983) ("A long established rule of evidence is that a judgment or decree itself is the highest and best evidence of its content. Consequently, the best evidence to prove a conviction is the judgment of conviction itself or a properly authenticated copy thereof." (Citations omitted.)), the statute allows and our courts have accepted other methods of proof. *See Drozdowski,* 9 Haw. App. 583, 854 P.2d 238.[19]

The most critical factor in this case, however, and what most sets it apart from prior cases, is the fact that Heggland does not contest the fact that he has a prior conviction (in fact he stipulated to it) and does not specifically challenge the date of sentencing apparent from the prosecution's evidence. That date was argued by the prosecution in

its sentencing motion, was apparent from the ICON document the prosecution attached in support, and was also established in the presentence report narrative. Heggland does not suggest any different sentence date for his conviction and did not avail himself of the opportunity to controvert the presentence report's identification of November 14, 1997 as the relevant date, even though he did request other corrections.[20] *See* HRS § 706–604 (1993) ("The court shall furnish to the defendant or the defendant's counsel and to the prosecuting attorney a copy of the report of any pre-sentence diagnosis ... and afford fair opportunity, if the defendant or the prosecuting attorney so requests, to controvert or supplement them."); *State v. Kamae,* 56 Haw. 628, 637, 548 P.2d 632, 638 (1976) ("In an ordinary term sentencing proceeding, a sentencing judge customarily relies upon information furnished to him in a presentence diagnosis and report."). *Cf. People v. Matthews,* 362 Ill.App.3d 953, 299 Ill.Dec. 411, 842 N.E.2d 150, 161–62 (2005) (holding that by failing to object to his presentence report, the defendant conceded the accuracy of the report with respect to his prior convictions); *United States v. Bennett,* 472 F.3d 825, 833–34 (11th Cir.2006) (holding that by failing to object to the facts of his prior convictions contained in his presentence report, the defendant was deemed to have admitted those facts); *United States v. Fagans,* 406 F.3d

**19.** The concurring opinion contends that the evidence of Heggland's prior conviction falls short of what was accepted in *Drozdowski,* because in that case a probation officer testified that he provided numerous details to the foreign jurisdiction before receiving the document used to establish the defendant's prior conviction. The concurring opinion suggests that this testimony puts the evidence of conviction in *Drozdowski* on firmer footing, because it "would reasonably ensure that the document pertained to that defendant." Concurring Opinion at 11. While such testimony surely assists proof of identity with respect to prior conviction evidence, in this case Heggland does not dispute that the document pertains to him-in fact he affirmatively stipulated to the offense reflected in the ICON document-but merely asserts that the prosecution must provide a better form of proof to instantiate the conviction. In light of these facts, the absence of the type of identity-confirming testimony that took place in *Drozdowski* is immaterial.

**20.** Indeed, on numerous occasions Heggland's counsel indicated that he did not dispute the sentence date. In Heggland's September 29,

2005 sentencing hearing, the court stated: "Okay. I think [the counsel for the prosecution] is saying, you guys, the Defendant has agreed that he has a conviction that-and that conviction was of a particular date; right?" and explained: "It's just saying you're agreeing to an underlying fact. He is free to argue how that underlying fact is going to apply." In reply, Heggland's counsel did not object to this characterization, but instead argued that the documents may have referred to a juvenile offense that does not qualify as a prior conviction, an argument that was later abandoned when Heggland entered into a stipulation with the prosecution that he had a "prior felony conviction in Colorado ... [for] conspiracy to commit aggravated robbery."

Later, at the December 7, 2005 hearing, after reciting the stipulations made with respect to the Colorado conviction, Heggland's counsel agreed with the court's statement: "Okay. So the only question that I have—I think is left unresolved— is the maximum term for this particular offense."

138, 142 (2d Cir.2005) (holding that because the defendant made no objection to the facts contained in his presentence report, the fact of his prior conviction referenced in the report could be taken as admitted).

Under these circumstances, there is no basis to question the sentence date for Heggland's conviction. The trial court is statutorily required to "accord due consideration to a written report of the diagnosis [the presentence report] before imposing sentence...." HRS § 706–601 (Supp.2003). In light of Heggland's stipulation, the combined evidence should have "reasonably satisfied" the court as to the prior conviction and its sentence date.[21] Accordingly, the circuit court abused its discretion in failing to accord the evidence its proper weight.[22] See Kahapea, 111 Hawai'i at 278, 141 P.3d at 451 ("[T]o constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant."). Therefore, because Heggland committed the PDD offense within the "maximum term of imprisonment possible" after his Colorado conviction, which was six years, application of the mandatory minimum statute is appropriate.

## IV. CONCLUSION

Based on the foregoing, we conclude that the ICA's analysis of the term "maximum term of imprisonment possible" in HRS § 706–606.5(2)(f), in Section III of its opinion, was erroneous. Accordingly, the ICA's judgment on appeal is vacated. Based on our analysis above, we vacate the sentence portion of the circuit court's judgment and remand to the circuit court for resentencing consistent with this opinion.

MOON, C.J., concurs in the result only.

Concurring opinion by ACOBA, J.

I concur in the result but additionally believe that the Intermediate Court of Appeals (ICA) did gravely err (1) in applying the holding of State v. Sinagoga, 81 Hawai'i 421, 918 P.2d 228 (App.1996), to this case because Petitioner/Defendant–Appellee Gregory Heggland (Petitioner) challenged the validity of his alleged prior conviction, State v. Heggland, 116 Hawai'i 376, 382, 173 P.3d 523, 529 (App.2007), and Sinagoga has been limited to uncounseled conviction or identity challenges, see State v. Veikoso, 102 Hawai'i 219, 227 n. 8, 74 P.3d 575, 583 n. 8 (2003); (2) in holding that the mandatory parole portion of Petitioner's Colorado conviction is part of the "maximum term of imprisonment possible" for purposes of HRS § 706–606.5(2)(f) (1993 & Supp.2005); and (3) in holding that the Circuit Court of the Third Circuit (the court) abused its discretion in refusing to credit all of the evidence proffered by Respondent/Plaintiff–Appellant State of Hawai'i (Respondent) to establish Petitioner's prior conviction.

### I.

As to the first point, the ICA stated that "[u]nder [State v.] Afong, [61 Haw. 281, 602 P.2d 927 (1979),] and Sinagoga, [Petitioner] had conceded the validity of the prior Colorado conviction by failing to raise a good-faith challenge that it was uncounseled or did not pertain to him." Heggland, 116 Hawai'i at

**21.** We agree with the concurring opinion that in light of Heggland's stipulation and the information contained in the presentence report, whatever objection Heggland had to the imposition of mandatory minimum sentencing "was insufficient to raise a material issue regarding the prior conviction." Concurring Opinion at 16.

**22.** Indeed, it is unclear whether the circuit court accorded the prosecution's evidence anything beyond superficial consideration, given that the court's initial denial of the prosecution's sentencing motion was based on the erroneous belief that the prosecution bore the initial burden of establishing that Heggland's prior conviction was counseled, despite the absence of a challenge by

Heggland raising this issue. Even though the circuit court ostensibly reconsidered its initial position at the January 17, 2006 hearing, it still focused on the prosecution's failure to establish that Heggland was represented by counsel in the Colorado proceedings, stating: "Furthermore, what was submitted does not indicate that he was, uh, represented by counsel, uh, in their proceedings that are indicated in the Integrated Colorado Online Network document." It appears that, based on its misapprehension of the prosecution's burden of proof, the circuit court failed to consider basic aspects of the evidence concerning Heggland's stipulated conviction and instead rejected that evidence in toto.

386, 173 P.3d at 533 (emphasis added). According to the ICA, as a result of Petitioner's failure to raise a good faith challenge, "there was no need for [Respondent] to prove by evidence beyond [Petitioner's] presentence report or stipulations that [Petitioner's] prior conviction was valid." *Id.* Agreeing with the ICA's opinion, and relying on the burden shifting analysis in *Sinagoga*, the majority states that "[Petitioner] did not raise a good faith challenge to the validity of his prior Colorado conviction[,]" when in fact "he affirmatively stipulated" to it. Majority opinion at 440, 193 P.3d at 356.

In my view, following this court's decision in *Veikoso*, *Sinagoga* does not apply, and the court was required to apply the standard in *State v. Freitas*, 61 Haw. 262, 278, 602 P.2d 914, 925 (1979), that "[p]roof of prior conviction may consist of 'any evidence, ... that reasonably satisfies the (sentencing) court that the defendant was convicted,'" (quoting HRS § 706–666(2)(1993))[1] as it apparently did in determining whether Petitioner's prior Colorado conviction was sufficiently proven. *Veikoso* was decided subsequent to *Sinagoga*. That case limited *Sinagoga's* application to a defendant's "challenge [of] a prior conviction on the grounds that it was (1) uncounseled and/or (2) not against the defendant." Majority opinion at 440, 193 P.3d at 356 n. 7 (quoting *Heggland*, 116 Hawai'i at 384, 173 P.3d at 531). In *Veikoso*, the majority and the concurrence held that a collateral attack on a prior conviction was prohibited where the prior conviction was an element required

to be proven. *See Veikoso*, 102 Hawai'i at 224, 74 P.3d at 580 (holding that "[t]he right to collaterally attack prior attack convictions in the context of proceedings on a subsequent offense does not extend to convictions based on allegedly invalid guilty pleas" (boldfaced font omitted)); *id.* at 227, 74 P.3d at 583 (Acoba, J. concurring) (stating that "for the sake of the orderly administration and disposition of cases ... a collateral attack on a prior conviction should not be allowed in trial proceedings in which the prior conviction is an element to be proven").

The *Veikoso* court recognized "the tension between [its] holding and dictum in *Sinagoga*" because *Sinagoga* "outline[d] a procedure whereby defendants could challenge convictions appearing in a presentence report on the basis that they were '(1) uncounseled, (2) *otherwise invalidly entered*, and/or (3) not against the defendant.'" *Id.* at 227 n. 8, 74 P.3d at 583 n. 8 (quoting *Sinagoga*, 81 Hawai'i at 446, 918 P.2d at 253 (emphasis added)).[2] *Veikoso* held that the phrase "otherwise invalidly entered" used in *Sinagoga* "should be disregarded" because it "may be misconstrued as permitting collateral attacks whenever the validity of a conviction is challenged[.]" *Id.* Accordingly, the import of *Veikoso* is that the *Sinagoga* five-step analysis does not apply in situations where the defendant does not raise a good faith challenge based on an uncounseled prior conviction and/or a prior conviction that was not rendered against the defendant.[3]

---

1. HRS § 706–666 provides:

 **Definition of proof of conviction.** (1) An adjudication by a court of competent jurisdiction that the defendant committed a crime constitutes a conviction for purposes of sections 706–606.5, 706–662, and 706–665, although sentence or the execution thereof was suspended, provided that the defendant was not pardoned on the ground of innocence.
 (2) Prior conviction may be proved by any evidence, including fingerprint records made in connection with arrest, conviction, or imprisonment, that reasonably satisfies the court that the defendant was convicted.
 (Boldfaced font in original.)

2. I adhere to my position in *Sinagoga* that the prosecution or movant submitting prior convictions as a basis for augmenting the sentence "should come forward with proof of the validity

of the relevant prior convictions" including proof that the prior conviction was not uncounseled. *Sinagoga*, 81 Hawai'i at 436, 918 P.2d at 243 (Acoba, J., dissenting) (footnote omitted).

3. As has been noted before, in an article published in the University of Hawai'i Law Review, Shirley M. Cheung critiqued *Sinagoga* with respect to adopting the five-step analysis. *State v. Sinagoga: The Collateral Use of Uncounseled Misdemeanor Convictions in Hawai'i*, 19 U. Haw. L.Rev. 813 (Fall 1997). Cheung states that the five-step analysis is a "contradiction to the spirit of the Sixth Amendment" because it "places the burden of identifying past convictions on the defendant," and the defendant's failure to raise a good faith challenge would permit the State to use a prior conviction in sentencing even if it was uncounseled. *Id.* at 840, 841 (footnotes omitted).

The majority agrees that *Veikoso* limits the *Sinagoga* procedure. Majority opinion at 440, 193 P.3d at 356 n. 7 (citation omitted). In the instant case, since Petitioner did not raise an uncounseled conviction or a mistaken identity challenge, *Sinagoga* does not apply at all.[4] Hence, Respondent does not benefit from the presumption of validity accorded an alleged prior conviction, as provided under step three [5] of the *Sinagoga* analysis. Rather, the sufficiency of the evidence establishing Petitioner's prior conviction must be assessed by the sentencing court under the standard established in *Freitas*. In sum, Petitioner did not raise the issue of whether the prior Colorado conviction was uncounseled or mistakenly applied against him, therefore, the *Sinagoga* procedure is not germane to his sentencing. Rather, where a mandatory minimum term of imprisonment is sought under the Hawai'i repeat offender statute, Respondent must provide evidence that "reasonably satisfies the court" of the prior conviction, as stated by *Freitas*, 61 Haw. at 278, 602 P.2d at 925 (citation omitted).

## II.

As to the second point, I concur that the phrase "maximum term of imprisonment possible" in HRS § 706–606.5(2)(f) "does not include the mandatory parole portion of a Colorado convicted defendant's sentence." Majority opinion at 436, 193 P.3d at 352. Thus, as the majority holds, the ICA erred by "misread[ing] the phrase to include any *possible imprisonment* that may arise from a sentence, even if not part of the original 'term of imprisonment.'" *Id.* at 436, 193 P.3d at 352 (emphasis in original).

Under Colorado's sentencing scheme, the term of imprisonment and the term of mandatory parole are distinct. *Craig v. People*, 986 P.2d 951, 963 (Colo.1999). More recently, in denying time-served credit against prison time for a defendant's violation of mandatory parole, the Colorado Court of Appeals did so on the ground that the term of mandatory parole must be distinguished from the term of imprisonment. *People v. Edwards*, 165 P.3d 904, 906 (Colo.Ct.App.2007). I note additionally that, if the courts of Colorado were to characterize mandatory parole as part of a term of imprisonment as the ICA seemingly did, a prison sentence that is said to include mandatory parole would violate *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

In *People v. Kendrick*, 143 P.3d 1175, 1176 (Colo.Ct.App.2006), the defendant had pled guilty to aggravated robbery and was sentenced to fifteen years' imprisonment and five years' mandatory parole. Under Colorado law, as a class three felony, aggravated robbery ordinarily carried a sentence of imprisonment ranging from four to twelve years plus mandatory parole. *Id.* (citing Colo. Rev.Stat. § 18–1.3–401(1)(a)(V)(A) (2005)). However, aggravated robbery was considered an "extraordinary risk crime" and therefore subject to Colorado Revised Statutes § 18–1.3–401(10) (2005), which added four years to the aforementioned sentence, thus increasing the presumptive range of imprisonment from four to sixteen years. *Id.*

The defendant there argued that his fifteen-year sentence plus the five years of mandatory parole amounted to a twenty-year

---

4. The majority asserts that this opinion "intimate[s] that *Sinagoga* is irrelevant" but that *Sinagoga* is relevant because it "provides the appropriate framework for analyzing whether [the court] erred." Majority opinion at 441, 193 P.3d at 357 n. 11. The point of course, as stated herein, is that *Sinagoga* does "not apply," *i.e.*, govern, Petitioner's case. *See* discussion *supra*. If "relevant" refers to the underlying facts that give rise to the issues on appeal, that is common in every case and says nothing about the point that *Sinagoga* is not pertinent to Petitioner's case.

5. Step three provides that

> prior to imposing the sentence, the court shall inform the defendant that (a) each reported criminal conviction that is not validly challenged by the defendant is defendant's prior, counseled, validly entered criminal conviction, and (b) a challenge to any reported prior criminal conviction not made by defendant before sentence is imposed may not thereafter, absent good cause, be raised to attack the court's sentence.

*Sinagoga*, 81 Hawai'i at 447, 918 P.2d at 254.

sentence that thus exceeded the "statutory maximum available for his conviction" in violation of *Apprendi* and *Blakely*. *Id.* The Colorado appellate court noted that the maximum sentence imposable under statute "for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, unless the defendant has stipulated to judicial fact finding for sentencing purposes." *Id.* (citing *Blakely*, 542 U.S. 296, 124 S.Ct. 2531; *Lopez v. People*, 113 P.3d 713 (Colo.2005)). However, *Kendrick* explained that the defendant's sentence did not violate either *Apprendi* or *Blakely* because "the use of the term 'maximum sentence' [under Colorado law] is intended to refer *only* to the length of imprisonment, *separate* from any period of parole." *Id.* at 1177 (emphases added). Because the Colorado "'General Assembly' [(legislature)] had separated mandatory parole periods from the concept of 'maximum sentence,' ... it therefore[ ] did not intend that the period of mandatory parole be part of the 'maximum sentence.'" *Id.*

Accepting that Petitioner's prior conviction was on November 14, 1997, as stated in the presentence report, see discussion *infra*, and Petitioner apparently does not dispute Respondent's statement that "if the Court[considers] the maximum term of imprisonment [as] six years from [Petitioner's] sentence on November 14, 1997[,]" the maximum term of imprisonment would range from November 14, 1997 to November 13, 2003, Petitioner's alleged crime was committed on August 28, 2003, and this was within the "maximum term of imprisonment possible" under HRS § 706–606.5(2)(f) without respect to the mandatory parole term.[6]

## III.

As to the third point, I do not believe the court abused its discretion in rejecting the ICON document and the testimony of Officer Reginald Une (Officer Une). "An abuse of discretion occurs when the court clearly ex-

ceeds the bounds of reason or disregards rules. or principles of law to the substantial detriment of a party litigant." *State v. Fetelee*, 117 Hawai'i 53, 63, 175 P.3d 709, 719 (2008) (citation omitted). The majority agrees that this standard requires the court to make a "judgment call" that on appeal, should be reviewed only for abuse of discretion. Majority opinion at 444–45, 193 P.3d at 360–61 (citation omitted).

### A.

With respect to the ICON document, the court opined that it "looks like a Colorado rap sheet[,]" the defense stated that it "appears to be the minutes" from a proceeding, and the prosecutor contended that it was an "abstract showing the arrest and the conviction in Colorado." *Heggland*, 116 Hawai'i at 379, 173 P.3d at 526. The court expressed its confusion, noting that it "[didn't] know what it is." *Id.* In addition, the court questioned whether the document could properly be used to prove Petitioner's prior conviction, stating that it instead "would expect ... some kind of a certified court document from Colorado" containing "evidence of [the] conviction if the dates are in question." *Id.*

The majority acknowledges that under *Freitas*, "certified copies of both the indictment and the *judgment*" are sufficient for proving the existence of a defendant's prior conviction for purposes of HRS § 706–666(2). Majority opinion at 41 (quoting *Freitas*, 61 Haw. at 278, 602 P.2d at 926) (emphasis added). *See also State v. Buffalo*, 4 Haw. App. 646, 649, 674 P.2d 1014, 1017 (1983) (stating that "the best evidence to prove a conviction is the judgment of conviction itself or a properly authenticated copy thereof" (citations omitted)). Unlike *Freitas*, however, Respondent in this case did not submit a certified copy of the judgment of conviction.

The majority also cites *State v. Drozdowski*, 9 Haw.App. 583, 854 P.2d 238 (1993), for the proposition that "evidence other than a

---

6. The presentence report stated that "[o]n November 14, 1997, [Petitioner] was sent to five years prison" for aggravated robbery in Colorado. However, Petitioner does not argue that a mandatory minimum sentence is inapplicable under HRS § 706–606.5 because his repeat offense was outside of the five year prison term imposed by the Colorado court but instead only takes issue with the sufficiency of the proof of the prior conviction.

certified copy of an indictment and judgment" may constitute sufficient evidence to establish a prior conviction in a foreign jurisdiction. Majority opinion at 444, 193 P.3d at 360. The majority posits that this proposition in conjunction with the fact that "the court misinterpreted [Respondent's] burden of proof" and that Petitioner "stipulated to the existence of his prior conviction," rendered the ICON document competent evidence that the court should have considered. *Id.*

However, the evidence considered by the trial court in *Drozdowski* and held by the ICA to be sufficient in establishing a prior conviction consisted of a document entitled "Criminal Minutes—Sentence" obtained in the following manner:

> The probation officer . . . testified that he utilized the National Crime Information System communication network and *provided the Santa Cruz Probation Department with the following information: Drozdowski's full name, FBI number, California number, height, weight, birth date, and social security number. In response, he received a copy of a document titled 'CRIMINAL MINUTES–SENTENCE'* that was certified by the Deputy Clerk of the Superior Court of California, County of Santa Cruz on December 6, 1990. *That document, in evidence, notes that on February 21, 1990 [the defendant] was represented by counsel named 'S. Wright' and, for violating § '2:11378 H & S Health and Safety Code, felony,' was sentenced, inter alia, to 180 days in the county jail (with credit for time served) and five years' probation during which he was required to* totally abstain from the use of intoxicants/drugs and to submit to testing for the use of controlled substances.

9 Haw.App. at 589, 854 P.2d at 241 (emphases added) (brackets omitted). The trial court there credited the evidence as proof of the defendant's prior conviction. *See id.*

The ICON document here also may have been minutes of Petitioner's prior arrest and conviction in Colorado and was also certified by the Colorado court. *Heggland,* 116 Hawai'i at 379, 173 P.3d at 526. However, unlike in *Drozdowski,* Respondent did not present a witness such as a police officer to verify in detail as to how the information in the document was obtained. Whereas the officer in *Drozdowski* testified to providing numerous details, including the defendant's "name, FBI number, California number, height, weight, birth date, and social security number," 9 Haw.App. at 589, 854 P.2d at 241, which would reasonably ensure that the document pertained to that defendant, here, there was no indication that similar information was provided in order to obtain the ICON document. In fact, the court cited the fact that "[t]here's nobody here to testify what" was meant by abbreviations in the ICON document as a basis for its understandable refusal to "speculate" about whether certain abbreviations stood for "public defender." *Heggland,* 116 Hawai'i at 380, 173 P.3d at 527. Moreover, unlike the ICON document, the *Drozdowski* document was plainly labeled as minutes, and clearly identified the defendant's counsel, the specific violation, and the length and terms of the sentence under the prior conviction. 9 Haw. App. at 589, 854 P.2d at 241. Unlike the ICON document, the *Drozdowski* document contained complete information understandable to all the parties.

Under analogous circumstances in *Buffalo,* the defendant was charged with robbery in the first degree, assault in the second degree, and of being a felon in possession of a firearm under HRS § 134–7. 4 Haw.App. at 647, 674 P.2d at 1016. The prosecution sought to establish the fact of defendant's prior felony conviction in California by evidence consisting of:

> (1) a cover sheet which purports to be an attestation and certification of the attached documents by the clerk of the Superior Court of the State of California in and for the County of Orange; (2) a copy of the second amended information charging [the defendant] with the wilful, unlawful and felonious killing of a human being in violation of § 187 of the California Penal Code; (3) a copy of the clerk's minutes of the arraignment hearing; (4) a copy of the clerk's minutes of the sentencing hearing; and (5) an Abstract of Judgment.

*Id.* at 647–48, 674 P.2d at 1016.

The ICA held the aforementioned documents insufficient to prove the defendant's

prior felony conviction for purposes of HRS § 134–7, which prohibits possession of a firearm by one convicted of a felony. *Id.* at 650, 674 P.2d at 1018 (footnotes omitted). Regarding the abstract of judgment, the ICA explained that this "is a document used in California to inform its prison officials of a conviction and provides the authority for carrying the judgment and sentence into effect" and is "merely a device by which the execution of the order of probation or judgment is carried out." *Id.* at 649–50, 674 P.2d at 1017 (footnote omitted).

With respect to the information charging the defendant and the minutes, the ICA stated that

> [a]ll they indicate is that person named Joseph William Buffalo was charged on an information and that the court clerk's minutes indicate that he was found guilty of second degree murder. Proof of an information is not proof of conviction and the clerk's minutes are not the best evidence of conviction.

*Id.* at 650 n. 4, 674 P.2d at 1018 n. 4. Although the ICA noted that it was considering the sufficiency of the evidence for purposes of HRS § 134–7, where a prior felony conviction was an element of the offense, rather than HRS § 706–666 and HRS § 706–606.5, *id.* at 650 n. 5, 674 P.2d at 1018 n. 15, *Buffalo* is instructive in that it demonstrates the historical rejection by the courts of this state of evidence other than a certified judgment of conviction to prove a prior conviction. In this case there is no indication of why a certified copy of the judgment of conviction was not obtained, after the issue was raised.

HRS § 706–666(2) plainly states that in order for evidence to be considered as establishing a prior conviction, such evidence must "reasonably satisf[y] the court that the defendant was convicted." Unlike the trial court in *Drozdowski*, the court here did not find that the ICON document should be credited with establishing a prior conviction. In my view, the court has not "clearly exceeded" any "bounds of reason" in refusing to credit a document where there was no information as to the circumstances under which the document was obtained, it was not entirely clear what the document purported to be, and

entries in the document were not understandable. Such refusal was within the court's discretion and neither Respondent nor the majority point to any "rules or principles of law" which the refusal violates.

### B.

In connection with Officer Une, his testimony consisted of the circumstances surrounding his supervision of Petitioner's mandatory parole for the Colorado conviction. Officer Une testified that the maximum supervision term for Petitioner's mandatory parole terminated on November 21, 2004, and that revocation of Petitioner's parole prior to this date meant that Petitioner " 'could have been sent back' to prison." *Heggland*, 116 Hawai'i at 379, 173 P.3d at 526. Officer Une also testified that based on his review · of documents contained in an "interstate compact packet" (the packet) sent by the state of Colorado, he believed Petitioner was convicted on November 14, 1997 in Colorado. *Id.*

The court stated that "having considered the ... testimony of [Officer Une], the [c]ourt is still of the mind and concludes that the fact of [Petitioner's] prior conviction, which is the basis for [Respondent's HRS § 706–606.5] motion, has not been established by satisfactory evidence." *Id.* at 380–81, 173 P.3d at 527–28. The majority holds that the "court abused its discretion in failing to accord the evidence[,]" which includes Officer Une's testimony, "proper weight" in establishing Petitioner's prior conviction. Majority opinion at 446, 193 P.3d at 362 (citation omitted).

As the majority acknowledges, Officer Une's testimony regarding the alleged November 14, 1997 date of Petitioner's Colorado conviction was based on the packet. *Id.* at 442–43, 193 P.3d at 358–59 (footnote omitted). However, there was no plain indication from the record of what type of document the "packet" was or what information it purported to contain. The majority states that Officer Une's reference to the packet is "likely a reference to the Interstate Compact for the Supervision of Adult Offenders, codified in HRS Chapter 353B," and likely contains "materials regarding [Petitioner's] criminal

record sent from Colorado pursuant to the interstate compact." *Id.* at 443, 193 P.3d at 359 n. 15. Plainly, the packet is an insufficient basis for establishing a prior conviction where it can only be speculated as to what the packet was and what information it provided.

Furthermore, Officer Une admitted that neither "a copy [nor a] certified copy of the judgment in [Petitioner's] Colorado case was included" in the packet. *Heggland,* 116 Hawai'i at 379, 173 P.3d at 526. Officer Une also testified to being unfamiliar with Colorado sentencing law.

In my view, then, the court did not abuse its discretion in refusing to credit Officer Une's testimony as establishing facts regarding Petitioner's prior conviction. Because the contents of the packet, let alone its credibility, were not clearly established in the record, and Officer Une lacked knowledge of any certified judgment of conviction and of the Colorado sentencing laws, the court's rejection of Officer Une's testimony regarding the prior conviction could not be an abuse of discretion.

### C.

With respect to the presentence report, the court did not credit it with establishing Petitioner's prior conviction. As the majority notes, under HRS § 706–601 (Supp.2003), a presentence report must be prepared for all felony cases after conviction and before sentencing unless the report requirement is waived. Majority opinion at 443, 193 P.3d at 359 n. 16. Thus, the court is bound by statute to "accord due consideration" to a presentence report "before imposing sentence" where, *inter alia,* "the defendant has been convicted of a prior felony." HRS § 706–601(a). In addition, as the majority explains, HRS § 706–604 (1993) provides that "[t]he court shall furnish to the defendant or the defendant's counsel and to the prosecuting attorney a copy of the report of any pre-sentence diagnosis ... and afford fair opportunity, if the defendant or the prosecuting attorney so requests, to controvert or supplement them." Majority opinion at 445–46, 193 P.3d at 361–62 (quoting HRS § 706–604(2)) (ellipsis in original).

Arguably, Petitioner did "contest[ ] whether [his] prior conviction qualified him" for mandatory minimum sentencing. But Petitioner stipulated that "[a]t the time [he] committed the offenses in the instant case, he had [a] prior felony conviction in Colorado ... for Conspiracy to Commit Aggravated Robbery." Petitioner however, failed to indicate the basis for his objection. Thus, Petitioner's objection was insufficient to raise a material issue regarding the prior conviction. Consequently, I agree that under these specific circumstances, the court abused its discretion in failing to credit the pre-sentence report.