***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

 Electronically Filed
 Supreme Court
 SCWC-29923
 27-MAY-2011
 09:40 AM

 IN THE SUPREME COURT OF THE STATE OF HAWAI#I

 ---o0o---

 STATE OF HAWAI#I, Respondent/Plaintiff-Appellee

 vs.

 CORNELIUS WESLEY DURHAM, Petitioner/Defendant-Appellant

 NO. SCWC-29923

 CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
 (CR. NO. 07-1-0220(2))

 MAY 27, 2011

 RECKTENWALD, C.J., NAKAYAMA, ACOBA, AND DUFFY, JJ., AND
 CIRCUIT JUDGE BORDER, ASSIGNED DUE TO A VACANCY

 OPINION OF THE COURT BY ACOBA, J.

 We hold that in a probation revocation proceeding, a

defendant must be given notice of all factual information related

to probation revocation that is contained in a probation

officer’s recommendation letter to the court in accordance with

State v. Paaaina, 67 Haw. 408, 689 P.2d 754 (1984). The lack of
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

such notice amounts to a violation of due process that requires

remand and a new probation revocation hearing to afford the

defendant an opportunity to address such information. Inasmuch

as such factual information was not disclosed to

Petitioner/Defendant-Appellant Cornelius Wesley Durham

(Petitioner), the January 11, 2011 judgment of the Intermediate

Court of Appeals (ICA) filed pursuant to its November 24, 1020

summary disposition order (SDO)1 is vacated, and the case is

remanded to the circuit court of the second circuit (the court)2
for a new evidentiary hearing on the motion for revocation filed

by Respondent/Plaintiff-Appellee State of Hawai#i (Respondent).

See State v. Durham, No. 29923, 2010 WL 4814111 (App. Nov. 24,

2010) (SDO).

 I.

 The following essential matters, some verbatim, are

from the record and the submissions of the parties.

 A.

 On April 20, 2007, Petitioner was indicted on two

counts of sexual assault in the third degree, Hawai#i Revised
Statutes (HRS) § 707-732(1)(b) (Supp. 2007).3 On August 6, 2007,

he entered no contest pleas to amended charges of sexual assault

 1
 The SDO was filed by Associate Judges Lawrence M. Reifurth and
Lisa M. Ginoza, with Chief Judge Nakamura dissenting.

 2
 The Honorable Rhonda I.L. Loo presided over the revocation
hearing.

 3
 HRS 707-732(1)(b) provides that “[a] person commits the offense of
assault in the third degree if[ t]he person knowingly subjects to sexual
contact another person who is less than fourteen years old or causes such a
person to have sexual contact with the person[.]”

 2
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

in the third degree, HRS § 707-732(1)(d) (Supp. 2007).4 The

court sentenced Petitioner to five years’ probation on each

count, to run concurrently, with standard and special terms and

conditions of probation. Special term and condition “J” required

Petitioner to participate in sex offender treatment:
 [Petitioner] must participate satisfactorily in the Hawai#i
 Sex Offender Treatment Program (HSOTP) with the provision
 that [Petitioner] obtain and maintain sex offender
 treatment, as approved by [his] probation officer, at [his]
 own expense until clinically discharged with the concurrence
 of [his] probation officer.

(Emphasis added.) Judgment was entered on September 20, 2007.

 B.

 In October 2007, Petitioner began to receive sex

offender treatment from Catholic Charities (Charities).

Petitioner was supervised by therapist Tamra Hayden-Billings

(Billings). In May 2008, Billings presented Petitioner with a

“Behavioral Lapse Contract” (contract) because, according to

Petitioner, he had had sexual contact with a co-worker and

students, making it likely that he would relapse. The contract

said that violation of its terms would result in “immediate

termination from Sex Offender Treatment[.]”

 Petitioner’s probation officer in the First Circuit,

Tiffany Bumanglag (Bumanglag), testified at the revocation

hearing. Bumanglag supervised Petitioner, who was residing on

Oahu but had committed the original crimes on Maui, under a

 4
 HRS § 707-732(1)(d) provides that “[a] person commits the offense
of assault in the third degree if[ t]he person knowingly subjects to sexual
contact another person who is mentally defective, mentally incapacitated, or
physically helpless, or causes such a person to have sexual contact with the
actor[.]”

 3
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

“courtesy supervision” for the second circuit. In that regard,

she would share information, when she had to, with Lara Nishikawa

(Nishikawa), Petitioner’s probation officer on Maui. Bumanglag

did not speak with Nishikawa on a regular basis. According to

Bumanglag, on May 28, 2008, approximately a week after Petitioner

received the contract, Petitioner left a voicemail message with

Bumanglag stating that he had signed the contract. However,

Billings said Petitioner had not signed the contract. At some

point, the contract was signed by Petitioner, who wrote “signed
under duress” on it. Although the contract was not dated, a

handwritten notation on the document states that it was “fax[ed]

from Tamra Cath Char” on June 19, 2008. Additionally, Bumanglag

stated that she received the signed contract on June 19, 2008.

 On June 25, 2008, Petitioner’s friend, attorney Leslie

Iczkovitz (Iczkovitz), drafted a letter to Bumanglag and

Billings, seeking clarification of “verbal and written

restrictions” that had been imposed on Petitioner. The letter

asked whether Petitioner had been threatened with “terminat[ion]

[] from the [Sex Offender Treatment Program (SOTP)] if
[Petitioner] d[id] not comply with the terms of his [contract]

that he signed under duress on June 4, 2008.”

 Izckovitz requested that Billings and Bumanglag

“respond to this letter, in writing, with [their] current

positions regarding the conditions and restrictions discussed [in

the letter].” According to the letter, Iczkovitz would “fil[e] a

motion . . . to amend [Petitioner’s] terms of probation to

prohibit . . . [a] continuing . . . violat[ion] of [Petitioner’s]

 4
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

fundamental rights[]” if resolution of the issue could not be

achieved.

 On June 27, 2008, Petitioner was involuntarily

terminated from Charities. The “Termination of Treatment” Report

filed June 30, 2008, submitted by Billings, cited four reasons

for termination, being that (1) Petitioner’s “threat of legal

action” interfered with the therapeutic relationship; (2) the

threat of litigation demonstrated resistance to treatment;

(3) signing the contract “under duress” indicated resistance to
treatment; and (4) failure to discuss the letter Iczkovitz sent

Billings and Bumanglag during group therapy suggested that

Petitioner wanted to keep secrets from the group.

 Petitioner reported that “[s]ix days after” his

termination, he began private treatment with Gregory Turnbull, a

licensed psychologist who treats sex offenders. Petitioner

declared that he applied, and was accepted, into another SOTP run

by Gerald Reardon on July 18, 2008, with the approval of his

probation officer.

 II.
 A.

 On July 15, 2008, Respondent filed a motion for an

order to show cause (OSC) as to “why the terms and conditions of

probation imposed . . . on September 20, 2007, should not be

revoked and [Petitioner] be resentenced by the [c]ourt[,]” and

for issuance of an arrest warrant. The motion was based upon the

recommendation of “[] Nishikawa, Senior Probation Officer, . . .

and Chapter 706 of the [HRS].” Respondent attached an affidavit

 5
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

in which Nishikawa attested that Petitioner violated the terms

and conditions of probation because he “ha[d] been terminated

from the [HSOTP].”

 B.

 1.

 The hearing on the revocation motion was eventually

scheduled for June 4, 2009.5 A “Confidential Violation Report of

Probation Officer in the Matter of the Motion For Revocation of

Probation” (Report) was submitted by Nishikawa to the court and
to the parties, at some point before the hearing.6 The Report

“apprise[d] the court and [Petitioner] of the pertinent facts of

the case as well as the facts and circumstances of the alleged

violation.”

 The Report recounted that Petitioner was accepted for

courtesy supervision and started sex offender treatment with

Charities in October 2007. According to the Report, Petitioner

initially had a “satisfactory” adjustment to the program, but in

May 2008, he was “suspended” because he was “unable to be

responsible and accountable for his actions.” On May 21, 2008,
he was presented with the contract, but Petitioner “held on to

[it] for about a month” before signing it “under duress.” After

 5
 The hearing was initially scheduled for September 17, 2008, but
for various reasons, it was continued to June 4, 2009. On December 9, 2008,
Petitioner’s counsel, a deputy public defender, moved to withdraw as counsel.
On April 14, 2009, the parties stipulated to continue the “evidentiary hearing
[on the OSC]” to June 4, 2009.

 6
 The record does not reflect when the parties received the Report.
However, they referred to it throughout the revocation hearing. Respondent
stated that the contract was “under attachment A of the [Report.]” The court
asked if it was a “two-page document[,]” to which Respondent replied that it
was.

 6
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

Iczkovitz’s letter was received by Bumanglag and Billings,

Petitioner was terminated from the program.

 2.

 Nishikawa had also written a letter dated September 10,

2008, addressed to Judge Shackley Raffetto, indicating that

Petitioner was a high risk to commit another assault because a

polygraph examination indicated he had assaulted four other

victims, and recommending that Petitioner’s probationary period

be extended for an additional five years with the condition that
Petitioner serve one year of imprisonment (recommendation

letter).
 According to progress reports received from
 [Charities], during the period of October thru March,
 [Petitioner’s] attitude/behavior were considered to be
 either “Good Attitude/Behavior” or “Very Good
 Attitude/Behavior.” This attitude/behavior deteriorated
 once [Petitioner] was suspended from treatment (May 2008),
 as evidenced by his deliberate procrastination to signing
 his [] contract, as well as the letter that was written on
 his behalf by his roommate, [Iczkovitz].
 In May 2008, after being in [treatment] for nearly
 [eight] months, [Petitioner] put himself in a “high risk”
 situation[.] This incident caused [Petitioner] to be
 suspended from treatment as well as be placed on a []
 contract with [Charities]. The [] contract appears to have
 instigated a letter written by [Petitioner’s]
 friend/roommate [Iczkovitz].
 . . . .
 A few things that were learned from [Petitioner’s]
 polygraph are of an immense concern. First of all,
 [Petitioner] has had four (4) other sexual assault victims,
 which does not include the victim in his current case.
 Secondly, [Petitioner] has used his prominent stature, as a
 former instructor and counselor, for sexual gratification as
 he has previously slept with students and clients. As
 mentioned in the termination letter from [Charities],
 [Petitioner] does seem to understand how his past behaviors
 need to be changed before engaging in further relationships
 with women. Without this understanding, it is felt that
 [Petitioner] is at a high risk to once again commit another
 assault. Perhaps jail time would give [Petitioner] an
 opportunity to internalize his actions and to understand
 that he is not a victim, he is a predator.
 [Petitioner] did not receive any jail time at the time
 of sentencing, however, a lengthy jail time would seem
 appropriate at this time.
 It is, therefore, respectfully recommended that . . .
 [Petitioner’s] probation be revoked and that he be
 resentenced to another Five (5) year term of probation with
 the following special conditions:

 7
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

 1. Serve a term of imprisonment of one (1) year, mittimus
 to issue forthwith, credit for time served on this OSC
 only[.]”

(Formatting altered.) (Emphases added.)

 C.

 On June 4, 2009, Judge Loo held the hearing on

Respondent’s motion for an OSC, apparently pursuant to HRS § 706-

625 (Supp. 2007).7 At the hearing, Bumanglag, Reardon, and

Iczkovitz testified. Additionally, letters from Petitioner’s

treatment providers, co-workers, and his girlfriend, were

submitted as exhibits. Respondent did not feel the need to call

“Nishikawa since her report’s in there[,]” and because “she did

not directly supervise [Petitioner.]”

 In argument, Petitioner’s deputy public defender

contended that Petitioner was terminated from the program because

of Iczkovitz’s letter. On the other hand, Respondent urged the

court to focus on the “four important reasons” for termination

listed by Billings. Respondent “strongly urge[d] th[e c]ourt to

follow the recommendation of the probation officer, . . . [t]o

revoke probation.” Respondent stated that it deferred “to the

 7
 HRS § 706-625, entitled “Revocation, modification of probation
conditions,” provides in relevant part:

 (1) The court, on application of a probation officer,
 the prosecuting attorney, the defendant, or on its own
 motion, after a hearing, may revoke probation . . . , reduce
 or enlarge the conditions of a sentence of probation,
 pursuant to the provisions applicable to the initial setting
 of the conditions and the provisions of section 706-627.
 . . . .
 (3) The court shall revoke probation if the defendant
 has inexcusably failed to comply with a substantial
 requirement imposed as a condition of the order or has been
 convicted of a felony. The court may revoke the suspension
 of sentence or probation if the defendant has been convicted
 of another crime other than a felony.

(Emphases added.)

 8
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

[jail] time that is requested by the probation officer in this

case.”

 Judge Loo concluded that there were “several reasons”

for Petitioner’s termination, including the fact that he

“interfered” with his therapeutic relationship, showed a lack of

desire to participate in treatment, did not complete the program,

was deceptive when signing the contract, and kept secrets from

his therapy group. The court revoked probation, concluding that

Petitioner “inexcusably failed to participate satisfactorily in
the [HSOTP] and was terminated[.]”

 The court sentenced Petitioner to “another five-year

term of probation”8 with the special condition that he serve one

year imprisonment “with mittimus to issue forthwith with credit

for time served on this OSC only.” The mittimus indicated that

Judge Loo was the “judge issuing sentence.” The Order Revoking

Probation and Resentencing Petitioner was filed on June 26, 2009.

It appears to have been signed by Judge Raffetto.

 D.

 On July 2, 2009, Petitioner filed a notice of appeal.
 On September 9, 2009, Petitioner filed a motion seeking

reconsideration of the sentence. Petitioner, among other

arguments, contended that a year in jail was too harsh for “a

 8
 A court can properly revoke probation and resentence a defendant
to another term of probation. Upon determining that a defendant “inexcusably
failed to comply with a substantial requirement of probation or has been
convicted of a felony[,]” “[t]he court may (1) modify the terms of probation;
(2) revoke probation and sentence him to imprisonment; or (3) revoke probation
and resentence him to another term of probation.” State v. Viloria, 70 Haw.
58, 61, 759 P.2d 1376, 1378 (1988); see also HRS § 706-625(5) (“When the court
revokes probation, it may impose on the defendant any sentence that might have
been imposed originally for the crime of which the defendant was convicted.”).

 9
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

probationer who made no wilful and deliberate attempt on his part

to circumvent the order of the court[.]” Respondent opposed the

motion for reconsideration, arguing that the court appropriately

revoked probation and resentenced Petitioner. On September 24,

2009, the court denied the motion.

 III.

 A.

 Petitioner filed his Opening Brief on February 18,

2010, arguing, inter alia, that the court abused its discretion
in revoking Petitioner’s probation because the court’s findings

of fact were not supported by the evidence and did not indicate a

wilful and inexcusable failure to comply with probation. In

Petitioner’s view, his probation was revoked, “not because of

what he had done, but because Billings overreacted to Iczkovitz’s

letter.” On May 4, 2010, Respondent filed an Answering Brief,

countering, inter alia, that the court looked to “other factors,”

in addition to Iczkovitz’s letter, when determining the reasons

for termination. Thus, according to Respondent, the evidence

supported the court’s decision. In Reply, Petitioner argued,
inter alia, that the evidence clearly established that

Iczkovitz’s letter caused Petitioner’s termination.

 B.

 On October 29, 2010, the ICA issued an order seeking

supplementation of the record with the Report and attachments,

stating,
 At the June 4, 2009[] evidentiary hearing on
 [Respondent’s OSC], the circuit court appears to have relied
 on documents that were not made a part of the record on
 appeal: a probation violation report and attachments,

 10
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

 including a letter from [Billings] entitled “Termination of
 Treatment, Child Sexual Abuse Treatment Program[.]”
 These documents were not made part of the record on
 appeal. . . . IT IS HEREBY ORDERED that:
 1. To the extent the documents were admitted or
 considered at the evidentiary hearing on June 4, 2009,
 [Petitioner] shall take all necessary action to request that
 the probation violation report and attachments[] . . . be
 made part of the Record on Appeal. . . .
 2. . . . If the requested documents contain
 confidential information or were filed under seal, they
 should be submitted to the appellate court under seal.

(Emphases added.)

 The record was supplemented with additional documents,

filed under seal, on November 18, 2010.
 On November 24, 2010, a majority of the three-judge ICA

panel affirmed the court. The ICA majority concluded that the

“court's finding that [Petitioner] ‘failed to comply with a

substantial requirement imposed as a condition of [probation]’

. . . was not clearly erroneous, as there is substantial evidence

in the record to support this finding.” 2010 WL 4814111, at *1.

The majority decided that Petitioner’s “premature termination”

from Charities, “prior to being clinically discharged and without

the concurrence of his probation officer, constituted a failure

to comply with a substantial requirement of his probation.” Id.
The four reasons for Petitioner’s termination, adduced from the

revocation hearing, according to the majority, provided evidence

that Petitioner’s failure to comply with his terms of probation

was inexcusable.

 Chief Judge Nakamura dissented. In his view, the

evidence “reflect[ed] that [Charities] terminated [Petitioner]

basically because an attorney friend wrote a letter complaining

about certain restrictions imposed on [Petitioner] as part of his

treatment.” Id. at *3 (Nakamura, C.J., dissenting). Thus,

 11
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

Respondent “did not demonstrate that [Petitioner’s] termination

from the [Charities’] program was justified.” Id.

 C.

 1.

 On November 24, 2010, Iczkovitz discovered the

recommendation letter upon review of the supplemental documents

filed on November 18, 2010.

 On December 5, 2010, Iczkovitz became Petitioner’s

counsel pursuant to a notice of withdrawal and substitution of
counsel.

 On December 6, 2010, Petitioner filed a motion for

reconsideration with the ICA on the grounds that Petitioner had

recently discovered the recommendation letter, the letter recited

false information about Petitioner that the court had received,

and likely relied on, when issuing its order, and the ICA

misapplied the law. The motion alleged that the September 10,

2008 recommendation letter from Nishikawa to Judge Raffetto

included “false, inflammatory and highly prejudicial statements

that, if believed, established [Petitioner] as a high risk
predator.”9

 The declaration of Petitioner’s deputy public defender,

and the recommendation letter itself, were filed in connection

with the motion for reconsideration. The deputy public defender

declared that she had never seen “a copy of a letter dated

September 10, 2008 from [] Nishikawa, [Petitioner’s] Probation

 9
 Petitioner quoted verbatim parts of the September 10, 2008
confidential recommendation letter from Nishikawa to Judge Raffetto in his
public filings of December 6, 2010, and February 2, 2011, with the court.

 12
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

Officer at the time, addressed to Judge Shackley Raffetto,” and

that, upon review of her case file, she did not see a

recommendation letter.

 In the reconsideration motion, Petitioner quoted the

following as the “false information” contained in the

recommendation letter:
 A few things that we learned from polygraph are of immense
 concern. [Petitioner] has had [four] other sexual assault
 victims which does not include the victim in his current
 case.

Petitioner also quoted the language that alleged he “is at high
risk to once again commit another assault.” According to

Petitioner, the recommendation letter was “available for review

by Judge [] Loo prior to her verbally issuing her [o]rder

[r]evoking [p]robation and [r]esentencing [Petitioner.]”

Petitioner indicated that the content of the letter “makes

apparent the likely basis for the [court] revoking [Petitioner’s]

probation, ordering him to prison for one year and extending his

probation for an additional five years.”

 Petitioner conceded that a sentencing recommendation is

confidential and need not be disclosed to a defendant. However,
he contended it was improper to submit new factual information to

a court and for a court to receive or review that information,

without disclosing it to a defendant. (Citing Paaaina, 67 Haw.

408, 689 P.2d 754.) Petitioner also maintained that “it is

customary and proper for a sentencing recommendation to be

reviewed by a court only after the defendant has been found

guilty of a probation violation.” Otherwise, “the court’s

judgment will likely be negatively affected by a probation

 13
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

officer’s opinions of a person’s risk status and descriptions of

a person’s past offenses.”

 2.

 On December 30, 2010, the ICA majority denied the

motion for reconsideration as follows:
 In the instant appeal, the points of error raised by
 [Petitioner] focused on: (a) the facts and circumstances of
 [Petitioner] being terminated from a [SOTP] and whether that
 constituted an inexcusable failure on his part to comply
 with a substantial condition of his probation; and (b)
 whether he had ineffective assistance of counsel. With
 regard to these points of error, the circuit court did not
 abuse its discretion in revoking [Petitioner’s] probation.
 The stated basis for the circuit court's revocation order
 was that [Petitioner] failed to comply with Special
 Condition J of his probation because he was terminated from
 the sex offender treatment program without being clinically
 discharged. In addressing [Petitioner] during the
 revocation hearing, the circuit court stated: “You were
 deceptive; you weren't open to treatment; you didn't follow
 through with treatment; you were supposed to complete -
 you're supposed to complete satisfactorily the [HSOTP] with
 the . . . concurrence of your probation officer, and you
 didn’t do that.” Nowhere in the record does the circuit
 court mention or allude to other factors in revoking
 [Petitioner’s] probation. [10]

State v. Durham, No. 29923, 2010 WL 5497543, at *1 (App. Dec. 30,

2010) (Order Denying Motion for Reconsideration) (ellipsis in

original) (brackets omitted). The ICA majority maintained that

“[a]lthough [Petitioner’s] current allegations of false
information in the [recommendation l]etter raise a potentially

significant issue, the record is not sufficiently developed in

that regard.” Id. (footnote omitted).

 10
 Although Judge Nakamura agreed “with the majority’s conclusion
that [Petitioner’s] arguments regarding newly-discovered evidence do not
warrant granting his motion for reconsideration,” he would have granted the
motion “to the extent it challenges the substantive basis for the [SDO].”
2010 WL 5497543, at *1 (Nakamura, C.J., concurring and dissenting).

 14
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

 The ICA confirmed that a defendant should “‘have access

to all factual information used in sentencing.’” Id. at *1 n.2

(quoting Paaaina, 67 Haw. at 411, 689 P.2d at 757). However,

according to the ICA, Petitioner’s “allegations regarding the

false information and also whether the information had any role

in the [] court’s revocation decision will need to be addressed

by way of a petition pursuant to Rule 40 of the Hawai#i Rules of

Penal Procedure (HRPP).”11 Id. at *1. On February 7, 2011,

Petitioner filed an Application for Writ of Certiorari, seeking
review of the January 11, 2011 judgment of the ICA.

 IV.

 Petitioner lists the following questions in his

Application:
 A. Did the [court] abuse its discretion in revoking
 [Petitioner’s] probation where the court’s findings were
 unsupported by the evidence presented and nothing in the
 record indicated that [Petitioner] had wilfully, inexcusably
 failed to comply with a substantial condition of his
 probation?
 B. Did the [court] abuse its discretion in revoking
 [Petitioner’s] probation while he was fully compliant with
 all conditions of his probation?
 C. Does the newly discovered ex-parte letter to the [court]
 from [Petitioner’s] probation officer containing extremely
 prejudicial false facts never disclosed to [Petitioner]
 require reversal of the order revoking [Petitioner’s]
 probation based on [Paaaina]?

 Respondent did not file a Response. We accepted

certiorari primarily to resolve the third question.

 11
 HRPP Rule 40 provides a post-conviction means for defendants to
seek relief from a judgment of conviction or from custody. A defendant may
challenge the judgment of conviction on the grounds that “the judgment was
obtained or sentence imposed in violation of the Constitution of the United
States or of the State of Hawai#i[,]” “the court which rendered the judgment
was without jurisdiction[,]” “the sentence is illegal[,]” “there is newly
discovered evidence[,]” or on “any ground which is a basis for collateral
attack[.]” HRPP Rule 40(a)(1)(i)-(v). A defendant can challenge his custody
on the grounds that the “sentence was fully served[,]” the “parole or
probation was unlawfully revoked[,]” or “any other ground making the custody,
though not the judgment, illegal.” HRPP Rule 40(a)(2)(i)-(iii).

 15
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

 V.

 The recommendation letter was submitted to the court

for its consideration and the court did make reference to the

probation officer’s recommendation, as did Respondent, during the

hearing. It is reasonable to assume that in the ordinary course,

the court would review the probation officer’s recommendation.

The letter contained alleged facts “learned from the

[Petitioner’s] polygraph” regarding “four (4) other sexual

assault victims.” Inasmuch as those facts were not disclosed on
the record, the basis for the court’s decision cannot be reviewed

in their absence. Thus, an evaluation of whether the court erred

or abused its discretion as presented in questions A and B of the

Application, cannot be performed appropriately. Correlatively,

Petitioner was entitled to an opportunity to respond to the

alleged other assaults. Accordingly, the crux of the Application

is a resolution of question C.

 VI.

 In connection with question C, Petitioner argues that

(1) the recommendation letter contained false information
undisclosed to Petitioner, (2) Petitioner was deprived of his

right to refute the “new factual information” in violation of

Paaaina, (3) it was “highly probable” that a court would rely on

such information from a probation officer, and the recommendation

letter explains why the court was so “unforgiving” to Petitioner,

and (4) this court should consider a new rule requiring a court

to review a probation officer’s recommendations only after

determining that a defendant violated probation.

 16
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

 VII.

 We initially address Petitioner’s first two arguments.

 A.

 The alleged facts concerning four other victims was not

disclosed before or at the revocation hearing. Petitioner had

the right, as set forth in Paaaina, to be notified of allegations

regarding other victims so that he could have challenged their

accuracy. In Paaaina, this court noted that, “[i]f the judge

finds new factual information in the recommendation letter, it is
incumbent upon the judge to make it available to the defendant.”

67 Haw. at 410, 689 P.2d at 757. In that case, the court

received a pre-sentence diagnosis and report (pre-sentence

report) and a confidential letter from the probation officer

containing the officer’s sentencing recommendation before the

sentencing hearing. Id. at 408-09, 689 P.2d at 755. The pre-

sentence report, but not the letter, was made available to the

defendant. Id. The defendant requested that the probation

officer’s recommendation be revealed to the parties, but the

circuit court denied the request and sentenced the defendant.
Although this court held that the defendant had no constitutional

or statutory12 right to examine the confidential recommendation

letter, it was concluded that the defendant had a right to all

factual information used in sentencing, even if that included

facts contained in the recommendation letter:

 12
 As to any statutory right, the court noted that the statutes at
issue, §§ 706-601 to -604 (1976), did not “mention that the probation
officer’s recommendation must be made available to defendants.” 67 Haw. at
409, 689 P.2d at 756. Those statutes currently do not provide that the
probation officer’s recommendation must be made available to the parties.

 17
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

 HRS §§ 706-602[ 13] and 706-604[ 14] clearly contemplate that a
 defendant will have access to all factual information used
 in sentencing. Therefore, it is incumbent upon the
 probation officer to carefully draft the recommendation
 letter and it should be based only on facts contained in the
 pre-sentence report. If the judge finds new factual
 information in the recommendation letter, it is incumbent
 upon the judge to make it available to the defendant.

 13
 HRS § 706-602 (1993) currently provides, in relevant part:

 (1) The pre-sentence diagnosis and report shall be
 made by personnel assigned to the court, intake service
 center or other agency designated by the court and shall
 include:
 (a) An analysis of the circumstances attending the
 commission of the crime;
 (b) The defendant’s history of delinquency or
 criminality, physical and mental condition,
 family situation and background, economic status
 and capacity to make restitution or to make
 reparation to the victim or victims of the
 defendant’s crimes for loss or damage caused
 thereby, education, occupation, and personal
 habits;
 (c) Information made available by the victim or
 other source concerning the effect that the
 crime committed by the defendant has had upon
 said victim, including but not limited to, any
 physical or psychological harm or financial loss
 suffered;
 (d) Information concerning defendant’s compliance or
 non-compliance with any order issued under
 section 806-11; and
 (e) Any other matters that the reporting person or
 agency deems relevant or the court directs to be
 included.

 14
 HRS § 706-604 (1993 & Supp. 2010) currently provides, in pertinent
part:

 (1) Before imposing sentence, the court shall afford a
 fair opportunity to the defendant to be heard on the issue
 of the defendant’s disposition.
 (2) The court shall furnish to the defendant or the
 defendant’s counsel and to the prosecuting attorney a copy
 of the report of any pre-sentence diagnosis or
 psychological, psychiatric, or other medical examination and
 afford fair opportunity, if the defendant or the prosecuting
 attorney so requests, to controvert or supplement them. The
 court shall amend or order the amendment of the report upon
 finding that any correction, modification, or addition is
 needed and, where appropriate, shall require the prompt
 preparation of an amended report in which material required
 to be deleted is completely removed or other amendments,
 including additions, are made.

(Emphases added.) The 1976 version cited in Paaaina was substantially the
same, stating that, “[t]he court shall furnish to the defendant or his counsel
and to the prosecuting attorney a copy of the report of any pre-sentence
diagnosis or psychiatric or other medical examination and afford fair
opportunity, if the defendant or the prosecuting attorney so requests, to
controvert or supplement them.” Paaaina, 67 Haw. at 409, 689 P.2d at 756
(quoting HRS § 706-604(2) (1976)).

 18
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

Id. at 410, 689 P.2d at 757 (first emphasis in original, other

emphases added). However, because the “recommendation was made

based only on facts contained in the pre-sentence report[,]” this

court concluded that no disclosure was required. Id.

 Analogously, in the instant case, it was “incumbent” on

Nishikawa to draft her recommendation “based only on facts,” id.,

contained in her probation violation report. However, that four

additional individuals were allegedly assaulted by Petitioner are

factual allegations not contained in the Report. Thus, it became
“incumbent upon the judge,” id., to disclose the alleged facts of

other assaults to Petitioner. The court, however, did not

disclose that fact.

 B.

 The disclosure of facts to the parties is based on the

proposition that the court must have correct information to

render a just sentence. “In any system which vests discretion in

the sentencing authority, it is necessary that the authority have

sufficient and accurate information so that it may rationally

exercise its discretion.” State v. Lau, 73 Haw. 259, 262, 831
P.2d 523, 525 (1992) (internal quotation marks and citation

omitted). Hence, at sentencing, a defendant is afforded the

opportunity to controvert or supplement facts that the probation

officer relied upon to correct errors:
 [T]he legislature was not unmindful of the dangers posed to
 the defendant in terms of those portions of the report which
 might be misleading, incomplete, or inaccurate. Thus, [in
 HRS § 706-604,] the legislature afforded the defendant an
 opportunity to respond to the presentence report, and more
 importantly, an opportunity to rebut those sections in
 question.

 19
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

State v. Lessary, 83 Hawai#i 280, 284-85, 925 P.2d 1104, 1108-09

(App. 1996) (quoting State v. Nobriga, 56 Haw. 75, 80, 527 P.2d

1269, 1273 (1974) (indicating that precluding a defendant from

ascertaining the probation officer’s reasons for omitting certain

factors in a presentence report weighing against imprisonment

would hinder the defendant’s ability to adequately present a

basis for amending the report)). Analogously, here, Petitioner

should have been afforded the opportunity to controvert the

assault allegations because they were not contained in the
Report.

 C.

 A defendant is also entitled to notice of the grounds

upon which probation is sought to be revoked:
 The prosecuting attorney, the defendant’s probation officer,
 and the defendant shall be notified by the movant in writing
 of the time, place, and date of any such hearing, and of the
 grounds upon which action under this section is proposed.
 The prosecuting attorney, the defendant’s probation officer,
 and the defendant may appear in [sic] the hearing to oppose
 or support the application, and may submit evidence for the
 court’s consideration. The defendant shall have the right
 to be represented by counsel. For purposes of this section
 the court shall not be bound by the Hawaii rules of
 evidence, except for the rules pertaining to privileges.

HRS § 706-625(2) (emphasis added). In State v. Wong, 73 Haw. 81,

82, 829 P.2d 1325, 1326-27 (1992), the State had filed a motion

for revocation of probation, “alleging as the sole basis, that

[the defendant] had failed to maintain treatment at [the Hawai#i

Addiction Center] until clinically discharged[.]” However, at

the hearing, the circuit court heard testimony that the defendant

“was dangerous because he was very likely to repeat his sexual

offense and that the only appropriate treatment was through the

Department of Corrections and required a year of

 20
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

incarceration[.]” Id. at 83, 829 P.2d at 1326. The circuit

court, “based on [the defendant’s] dangerousness to the

community,” revoked the defendant’s probation and resentenced him

to concurrent terms of incarceration. Id. at 82, 829 P.2d at

1326.

 This court, in vacating the order revoking probation

and remanding the case for a rehearing, stated that the defendant

was required to “be informed of the grounds for revocation in

addition to the mere fact of his discharge from the drug

treatment program that supported the State’s motion for

revocation.” Id. at 87, 829 P.2d at 1329. Because he was not

notified that his danger to society was a ground for revoking

probation, the defendant was not informed properly of the grounds

for revocation.

 Similar to the defendant in Wong, in the instant case,

Petitioner was notified that revocation was sought solely because

he was terminated from his treatment program. However, based on

the recommendation letter, revocation was also apparently

initiated on the basis that Petitioner was dangerous. Nishikawa

was “immense[ly] concern[ed]” about Petitioner’s behavior
regarding additional victims, and advised the court that

“[Petitioner] is at a high risk to once again commit another

assault[,]” and emphasized that “jail time would give

[Petitioner] an opportunity to internalize his actions[.]” Thus,

revocation was suggested because Petitioner, like Wong, allegedly

“was very likely to repeat his sexual offense[.]” Wong, 73 Haw.

at 83, 829 P.2d at 1326. Similar to the defendant in Wong,

 21
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

Petitioner was entitled to notice prior to the hearing of the

grounds, i.e., the other alleged assaults, upon which the

probation officer recommended revocation.15 See Morrissey v.

Brewer, 408 U.S. 471, 489 (1972) (requiring that a probationer be

given written notice of the claimed violations of probation).

 While evidence supporting the charge that Wong was

dangerous was introduced at the hearing, in the instant case

alleged evidence that Petitioner had victimized others or was

likely to commit another sexual assault was not elicited at the
revocation hearing. Petitioner was never informed of such a

ground for revocation. Thus, he had no opportunity to object,

rebut, or otherwise dispute the factual allegations.

 D.

 Due process mandates that factual information upon

which revocation is sought be provided to the defendant, inasmuch

as “[t]he question of whether the defendant should be sentenced

to imprisonment or to probation is no less significant than the

question of guilt[.]” Commentary on HRS § 706-604(2).

“[M]otions to revoke are weighty matters deserving proportional
solemnity in their resolution.” State v. Shannon, 118 Hawai#i 15,

32, 185 P.3d 200, 217 (2008). A “defendant, ‘threatened with

loss or change of . . . probation status[, must be given] the

same procedural protection afforded . . . at the time of original

disposition[, i.e., sentencing].” Id. (quoting Commentary on HRS

 15
 Petitioner also argues that Nishikawa’s statement that Petitioner
was at a “high risk” to society lacked any basis in the record. It appears
that Nishikawa’s statement that Petitioner is a high risk would be a “ground[]
for revocation,” Wong, 73 Haw. at 87, 829 P.2d at 1326, for which Petitioner
should have received notification.

 22
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

§ 706-627). Thus, “[a]s a matter of due process a motion to

revoke probation . . . is like a presentence report in that the

defendant must be notified beforehand in order to allow him to

contest it, if he wishes.” Id. at 31, 185 P.3d at 216. Indeed,

“the minimum requirements of due process[,]” Morrissey, 408 U.S.

at 489, initially provided to parolees but extended to

probationers in Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973),

require in relevant part that a probationer be given “written

notice of the claimed violations” of probation, “disclosure . . .
of evidence against him[,]” and “a written statement by the

factfinder as to the evidence relied on and the reasons for

revoking probation[,]” Morrissey, 408 U.S. at 489. Here,

Petitioner’s due process rights were violated to the extent that

he lacked “written notice” that revocation was sought because he

was a high risk to commit another offense, and he was not

notified of the “evidence” of other sexual assaults that was used

“against” him in seeking revocation.

 VIII.

 We address Petitioner’s remaining arguments.
 The court appears to have had the recommendation letter

in its possession before and during the revocation hearing.16

Respondent referenced the “recommendation of the probation

officer” and “jail time.” The court, after revoking probation,

acknowledged Respondent’s “suggestion to follow along with the

probation officer’s recommendation.” Indeed, the court followed

 16
 Although the recommendation letter and Report were addressed to
Judge Raffetto, it appears from the transcript that Judge Loo had the Report
and recommendation letter.

 23
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

every recommendation made by the probation officer in the

recommendation letter17 and incorporated every recommendation into

the order revoking probation and resentencing Petitioner.

 Similar to the presumption that a court has read a pre-

sentence report before a sentencing hearing, a court may be

presumed to have read a recommendation letter. A court is

required to “accord due consideration to a written [pre-sentence]

report of the diagnosis before imposing [a] sentence[.]” HRS

§ 706-601(1). See State v. Hussein, 122 Hawai#i 495, 532, 229
P.3d 313, 350 (2010) (noting that a court is presumed to have

read a pre-sentence report); see also State v. Heggland, 118

Hawai#i 425, 443, 193 P.3d 341, 359 (2008) (noting that the report

is meant to aid the court in the exercise of its discretionary

sentencing authority); Lau, 73 Haw. at 263, 831 P.2d at 525

(presuming that the sentencing court complied with the statutory

requirement of according due consideration to the pre-sentence

report when it had the document at the hearing).

 The probation officer was dutibound to “keep informed

concerning the conduct and condition of the defendant and report
thereon to the court, and . . . use all suitable methods to aid

the defendant and bring about an improvement in the defendant’s

conduct and condition.” HRS § 806-73(a) (Supp. 2007). It is

reasonable to conclude, then, that a court would give due

consideration to the probation officer’s recommendation letter.

Inasmuch as the court should have disclosed the alleged factual

matters to the parties and Petitioner was not given any

 17
 The Report did not indicate or recommend any sentence.

 24
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

opportunity to address those matters, a new revocation hearing is

necessary.18

 IX.

 A.

 As confirmed by counsel at oral argument on April 21,

2011, Petitioner has served the special probation condition of a

one-year term of imprisonment. Because Petitioner has served his

one-year term, it may be considered whether the court’s error, in

failing to disclose facts contained in the recommendation letter,
is moot. This court has explained that “[a] case is moot where

the question to be determined is abstract and does not rest on

existing facts or rights.” State v. Rogan, 91 Hawai#i 405, 424

n.13, 984 P.2d 1231, 1250 n.13 (1999). Hence, “the mootness

doctrine is properly invoked where events have so affected

relations between the parties that the two conditions for

justiciability relevant on appeal--adverse interest and effective

remedy--have been compromised.” Id.

 In the instant case, the court restarted Petitioner’s

five-year probation period commencing as of June 4, 2009, and,
therefore, Petitioner is on probation until June 4, 2014. As to

whether the parties continue to have an adverse interest, the

parties are in adversarial positions inasmuch as Petitioner

remains on probation as a result of the allegedly improper

 18
 As noted before, Petitioner urges this court to consider issuing a
new rule requiring that a court review a sentencing recommendation only after
determining that a defendant violated a term and condition of probation.
Inasmuch as Petitioner was unable to rebut the evidence against him that was
proffered in the recommendation letter, the proper remedy is to give
Petitioner the opportunity to challenge the information at a new hearing,
without the necessity of adopting a new rule.

 25
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

revocation of his probation. As to whether there is still an

effective remedy for Petitioner’s claim, setting aside the

revocation order and resentencing Petitioner and remanding to the

court for another revocation hearing may result in Petitioner’s

original terms of probation being reinstated. Inasmuch as he was

originally sentenced in 2007 to two concurrent five-year terms of

probation, as Petitioner’s counsel confirmed at oral argument,

Petitioner’s original probation would end at some point in 2012.

Based on the foregoing, Petitioner’s claim is not barred by the
mootness doctrine.

 B.

 As previously indicated, the ICA determined that, in

light of Paaaina, Petitioner’s “allegations . . . raise a

potentially significant issue” that “[would] need to be addressed

by way of a petition pursuant to Rule 40 of the [HRPP.]” Durham,

2010 WL 5497543, at *1. However, the record on appeal is

“sufficiently developed” to allow for a new evidentiary hearing

on the probation revocation motion on remand. Cf. State v.

Silva, 75 Haw. 419, 439, 865 P.2d 583, 592 (1993) (noting that
ineffective assistance of counsel claims can be entertained for

the first time on appeal where the “record is sufficiently

developed to determine whether there has been ineffective

assistance of counsel[]”). Here, the Report, recommendation

letter, transcript of the probation revocation hearing, and all

evidence from that hearing are in the record on appeal.

Petitioner’s deputy public defender submitted a declaration that

she had never seen the recommendation letter. Inasmuch as there

 26
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

are no matters to be developed to ascertain whether the alleged

factual matters in the recommendation letter were disclosed to

Petitioner, the record was “sufficiently developed.” Id.

 X.

 Petitioner seeks reversal of the court’s order revoking

probation. However, as stated supra, whether the court erred

when issuing that order cannot be evaluated appropriately without

knowledge of the bases for the court’s decision. The bases for

the court’s decision cannot be ascertained because the court,
before making its decision, had factual information weighing in

favor of revocation, but failed to disclose it and afford the

parties the opportunity to respond to such information. Inasmuch

as this court cannot appropriately decide whether the court erred

in revoking probation without knowledge of the bases for the

court’s decision, reversal, without more, is not warranted.

 Instead, we vacate the revocation order and remand for

a rehearing on whether Petitioner inexcusably failed to comply

with a substantial condition of probation. At the hearing, the

parties will have the opportunity to address the matters
previously raised and the factual information contained in the

recommendation letter. The court, after considering all the

evidence, can then decide whether Petitioner failed to comply

with a term of probation, whether that condition was substantial,

and whether Petitioner’s failure to comply was inexcusable. See

State v. Huggett, 55 Haw. 632, 639, 525 P.2d 1119, 1124 (1974)

(vacating the order requiring imprisonment as a special condition

of probation and affording the defendant a “rehearing to enable

 27
 ***FOR PUBLICATION IN WEST’S HAWAI#I REPORTS AND PACIFIC REPORTER***

the court to determine whether, considering the totality of the

circumstances, his post-sentencing conduct was wilfully and

deliberately subversive of exemplary probationary behavior”).

 Based on the evidence, the court may reinstate the

original September 20, 2007 sentence of probation or reinstate

the June 26, 2009 order revoking probation and resentencing

Petitioner. On remand, the new evidentiary hearing shall be held

before a different judge.19

 XI.
 Based on the foregoing, the ICA’s judgment of

January 11, 2011 is vacated, and the case is remanded for

proceedings consistent with this opinion.

Leslie K. Iczkovitz /s/ Mark E. Recktenwald
(Taryn R. Tomasa, Deputy
Public Defender on the /s/ Paula A. Nakayama
briefs) for petitioner/
defendant-appellant. /s/ Simeon R. Acoba, Jr.

Peter A. Hanano, Deputy /s/ James E. Duffy, Jr.
Prosecuting Attorney,
County of Maui (Richard K. /s/ Patrick W. Border
Minatoya, Deputy Prosecuting
Attorney, County of Maui,
on the brief) for
respondent/plaintiff-
appellee.

 19
 Remanding the matter to Judge Loo or Judge Raffetto would be an
inadequate remedy, as they had previously determined, after having possession
of the recommendation letter, that Petitioner’s probation should be revoked.
See Schutter v. Soong, 76 Hawai#i 187, 208, n.6, 873 P.2d 66, 87 n.6 (1994)
(remanding the re-sentencing to a new judge because the judge who originally
sentenced the defendant had already determined the sentence); see also State
v. Chow, 77 Hawai#i 241, 251 n.13, 883 P.2d 663, 673 n.13 (App. 1994)
(remanding case to a different judge, not because the appellate court
“question[ed] the impartiality of the district court judge who originally
sentenced [the d]efendant,” but because “the district court judge who
originally sentenced [the d]efendant ha[d] already made a sentencing
determination”) (citation omitted).

 28